928 A.2d 215

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Michael RAINEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 23, 2006.

Decided July 18, 2007.

68

70

72

74

Michael Wiseman, Billy Horatio Nolas, Philadelphia, for appellant, Michael Rainey.

Amy Zapp, Hugh J. Burns, Jr., Philadelphia Dist. Attorney's Office, for appellee, Com. of PA.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

Justice BAER.

Michael Rainey (Appellant) appeals from an Order of the Court of Common Pleas of Philadelphia County (PCRA Court) dismissing his Petition for Post–Conviction Relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. For the reasons set forth herein, we vacate the order of the PCRA court and remand this matter for an evidentiary hearing on Appellant's claim that trial counsel was ineffective

for failing to investigate and present background and mental health mitigation evidence during the penalty phase of this capital case. In all other respects, we affirm.

## Facts and Procedural History

The background underlying Appellant's conviction for first-degree murder and the imposition of a death sentence is set forth in *Commonwealth v. Rainey,* 540 Pa. 220, 656 A.2d 1326 (1995). Briefly, Appellant's conviction stems from the murder of seventy-four-year-old Carroll Fleming, which occurred on December 7, 1989,[1] when Appellant and his co-defendant George Williams, age twenty, along with Alvin "Eyeball" Morgan, age fourteen, decided to rob Fleming at his home, apparently because Appellant had previously seen the victim carrying money. In preparation for the robbery, Appellant armed himself with a twenty-gauge shotgun, stating that he would shoot Fleming if required.

While en route to Fleming's home at 11:00 p.m. that evening, the group of three encountered Kevin Lewis. Williams convinced Lewis that they were going to collect a debt, and Lewis offered Williams his gun, an inoperative .25 automatic, which Lewis said could be used "as a threat." Lewis then watched as the three proceeded to Fleming's home, where he witnessed the unfolding murder from a short distance away, close enough to hear the conversation and see what transpired. When Appellant, Williams, and Morgan arrived at Fleming's home, Morgan acted as a lookout while Appellant and Williams proceeded onto the porch. Appellant loaded his shotgun and knocked on the door. Receiving no immediate answer, Appellant kicked in the door. Fleming then appeared, and confronted the intruders on his porch. Williams pointed his handgun at Fleming, and repeatedly pulled the trigger, but the gun did not fire. Appellant, who by this time was behind Fleming, placed the muzzle of his gun against Fleming's back and fired, killing him.

---

1. Our opinion on direct appeal reflects that the murder occurred in December, 1991. A review of the record, however, reveals that this was incorrect, as the murder occurred in December, 1989.

Appellant, Williams, and Morgan were all arrested and charged with Fleming's murder. Both Appellant and Williams gave statements to the police. In December 1991, Appellant and Williams were tried together on charges of murder, criminal conspiracy, robbery, possession of an instrument of a crime, and carrying firearms on public streets. The Commonwealth introduced the eyewitness testimony of Lewis and Morgan, both of whom testified to witnessing the murder.[2]

The Commonwealth argued that from its inception, the plan hatched by Appellant and Williams was not just to rob the victim, but also to kill him if necessary. Appellant's counsel argued that regardless of who killed the victim, if the murder was committed in the course of a robbery, Appellant could only be convicted of second-degree murder, *see* 18 Pa.C.S. § 2502(b), and if it was committed in the course of a struggle during the collection of a debt, Appellant could only be found guilty of third-degree murder, *see* 18 Pa.C.S.A. § 2502(c). Defense counsel proceeded to cast doubt on the eyewitness testimony of Lewis and Morgan, both of whom testified that Appellant was the shooter. As evidence against Williams, the Commonwealth also introduced Williams' redacted confession. The jury found Appellant guilty of first-degree murder and related offenses.

During the penalty phase, the Commonwealth established the existence of one aggravating circumstance, that the murder had been committed during the perpetration of a felony.[3] The Commonwealth further stipulated that Appellant was eighteen years old at the time of the murder, and had no significant history of prior criminal convictions. The jury found three mitigating circumstances: the age of Appellant at the time of the crime; that Appellant had no significant history of prior criminal convictions; and the catchall mitigator.[4] The jury, finding that the aggravating circumstance

**2.** Morgan pleaded guilty to third-degree murder and related offenses, and testified against Appellant and Williams.

**3.** *See* 42 Pa.C.S. § 9711(d)(6).

**4.** *See* 42 Pa.C.S. §§ 9711(e)(1), (4) and (8).

outweighed the three mitigating circumstances, imposed a sentence of death.[5]

Following trial, Appellant's trial counsel filed post-trial motions and was subsequently permitted to withdraw his appearance. Appellant obtained new counsel, Mitchell Struttin, who, on September 28, 1993, filed supplemental post-trial motions raising additional issues, including trial counsel's ineffectiveness.[6] The trial court held a hearing on these allegations at which trial counsel testified. Following the hearing, the trial court denied the motions, and formally imposed the sentence of death. We affirmed Appellant's conviction on March 24, 1995. *Rainey,* 540 Pa. 220, 656 A.2d 1326. Appellant's petition for *certiorari* to the United States Supreme Court was denied on December 4, 1995. *Rainey v. Pennsylvania,* 516 U.S. 1008, 116 S.Ct. 562, 133 L.Ed.2d 488 (1995).

In due course, the Governor entered a warrant of execution, but as collateral review was not yet exhausted, on August 4, 1995, we ordered a stay of execution. Appellant then requested a change in counsel and filed a *pro se* PCRA petition on December 27, 1995. New counsel replaced appellate counsel and filed an amended petition for post-conviction relief on October 17, 1996. Appellant subsequently requested that an attorney from the Pennsylvania Post–Conviction Defender Association be allowed to replace his newest counsel. On November 18, 1996, a Petition for Habeas Corpus and PCRA relief was sent to the PCRA court, and confusion ensued about who was the attorney of record. After a hearing and testimony, the PCRA court ordered that counsel from the Defender Association be designated Appellant's counsel of record.

After several continuances, the Commonwealth responded to the PCRA petition on June 11, 1997. On August 8, 1997, the PCRA court dismissed Appellant's petition without a hearing. Appellant appealed, and on October 5, 1998, the PCRA court filed a short opinion adopting the arguments

5. Appellant's co-defendant, Williams, was convicted of second-degree murder and sentenced to life imprisonment.

6. Attorney Struttin continued to represent Appellant through his direct appeal.

advanced in the Commonwealth's motion to dismiss. On December 28, 2001, we remanded the case to the PCRA court and ordered a more detailed explanation of the reason for the court's disposition. *Commonwealth v. Rainey*, 567 Pa. 271, 786 A.2d 942 (2001); *see Commonwealth v. (Craig) Williams*, 566 Pa.553, 782 A.2d 517 (2001) (remanding PCRA case where the PCRA court adopted the Commonwealth's motion to dismiss as its opinion without setting forth its independent reasoning).

On remand, Appellant supplemented his original PCRA petition and requested leave to expand the issues for consideration before that court. The PCRA court delayed any decision, directing Appellant to make his request to raise additional issues to this Court. He did so, and on December 3, 2002, we denied Appellant's motion to expand the scope of remand. *See Commonwealth v. Rainey, per curiam* order, December 3, 2002. Nevertheless, on December 31, 2002, we entered a *per curiam* order granting Appellant's request to expand the scope of remand to include a claim that he was mentally impaired under the standards established in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (holding that the constitution prohibits the execution of mentally retarded criminals). *See Commonwealth v. Rainey, per curiam* order, December 31, 2002. We denied leave to raise any other issues. *Id.*

On October 27, 2003, Appellant wrote to the PCRA court, the District Attorney, and his defense counsel waiving his right to an evidentiary hearing. Appellant subsequently filed a counseled affidavit with the PCRA court seeking to withdraw such waiver. After several continuances granted upon the request of both the District Attorney and defense counsel, on June 24, 2004, Appellant withdrew his *Atkins* claim.

Pursuant to our remand order directing the PCRA court to write an opinion in accord with *(Craig) Williams*, 566 Pa. 553, 782 A.2d 517, the PCRA court issued an opinion on July 26, 2004, in support of its order of August 8, 1997, dismissing Appellant's petition. In its opinion, the PCRA court explained why all of Appellant's claims were either previously litigated,

waived, or not cognizable under the PCRA.[7] The case was thus returned to this court.

Appellant raises twelve issues with numerous sub-issues for review. Initially, we note that we have jurisdiction over Appellant's petition because we directly review the denial of post-conviction relief in death penalty cases pursuant to 42 Pa.C.S. § 9546(d). Additionally, the instant petition was filed in December of 1995, which was prior to the January 17, 1996 effective date of the November, 1995 amendments to the PCRA. Accordingly, the petition is governed by the previous version of the PCRA. *See (James) Jones,* 876 A.2d at 384; *Commonwealth v. Bond,* 572 Pa. 588, 819 A.2d 33, 37 (2002); 42 Pa.C.S. § 9543 (1988).

On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. *(James) Jones,* 876 A.2d at 384; *Commonwealth v. Breakiron,* 566 Pa. 323, 781 A.2d 94, 97 n. 4 (2001); *Commonwealth v. Strong,* 563 Pa. 455, 761 A.2d 1167, 1170 n. 3 (2000). In order to be eligible for PCRA relief under the prior version of the statute, Appellant must plead and prove by a preponderance of the evidence:

(1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is:

(i) currently serving a sentence of imprisonment, probation or parole for the crime;

(ii) awaiting execution of a sentence of death for the crime; or

(iii) serving a sentence which must expire before the person may commence serving the disputed sentence.

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United

---

7. Both Appellant and the Commonwealth agreed that the remand was for the limited purpose of allowing the court to write an opinion in support of its prior dismissal of Appellant's PCRA petition.

States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.

(iv) The improper obstruction by Commonwealth officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) A violation of the provisions of the Constitution, law or treaties of the United States which would require the granting of Federal habeas corpus relief to a State prisoner.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

(3) That the allegation of error has not been previously litigated and one of the following applies:

(i) The allegation of error has not been waived.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

(4) That the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel.

42 Pa.C.S. § 9543(a)(1)-(4) (1995).

■ An issue has been previously litigated if the highest appellate court in which the petitioner was entitled to review as a matter of right has ruled on the merits of the issue. *Id.* § 9544(a)(2) (1995); *Commonwealth v. Crawley,* 541 Pa. 408, 663 A.2d 676, 678 (1995). A PCRA claim is waived "if the petitioner failed to raise it and if it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or other proceeding actually conducted or in a prior proceeding actually initiated under this subchapter." 42 Pa.C.S. § 9544(b) (1995). Further, the relaxed waiver rule is no longer applicable to PCRA appeals pursuant to *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998) ("Henceforth, a PCRA petitioner's waiver will only be excused upon a demonstration of ineffectiveness of counsel in waiving the issue."). *(James) Jones,* 876 A.2d at 384 (declining to apply relaxed waiver to a PCRA appeal), *Commonwealth v. Kemp,* 562 Pa. 154, 753 A.2d 1278, 1285 (2000) (same). Therefore, any claims that Appellant waived are beyond the power of this Court to review. *(James) Jones,* 876 A.2d at 384.

■ Appellant advances several allegations of ineffective assistance of counsel relating to both the guilt and penalty phases of trial. In evaluating claims of ineffective assistance of counsel, we presume that counsel is effective. *Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 441 (1999). To overcome this presumption, Appellant must establish three factors. First, Appellant must demonstrate that the underlying claim has arguable merit. *See Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 356 (1995). Second, Appellant must establish that counsel had no reasonable basis for his action or inaction. *Id.* In determining whether counsel's action was reasonable, we do not question whether there were superior courses of action which counsel could have pursued; rather, we examine whether counsel's decisions had any rea-

sonable basis. *See Rollins,* 738 A.2d at 441; *Commonwealth v. (Charles) Pierce,* 515 Pa.153, 527 A.2d 973, 975 (1987). Finally, "Appellant must establish that he has been prejudiced by counsel's ineffectiveness; in order to meet this burden, he must show that 'but for the act or omission in question, the outcome of the proceedings would have been different.'" *See Rollins,* 738 A.2d at 441 (quoting *Travaglia,* 661 A.2d at 357). A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs. *Commonwealth v. (Michael) Pierce,* 567 Pa.186, 786 A.2d 203, 221–22 (2001); *Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 738 n. 23 (2000); *Albrecht,* 720 A.2d at 701 ("If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met."). In the context of a PCRA proceeding, Appellant must establish that the ineffective assistance of counsel was of the type "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt of innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii); *see also (Michael) Pierce,* 786 A.2d at 221–22; *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326, 333 (1999).[8]

■■ All allegations relating to trial counsel's stewardship are waived, as they were not raised during post-trial or direct appellate proceedings. *See* 42 Pa.C.S. § 9544(b); *Commonwealth v. D'Amato,* 579 Pa. 490, 856 A.2d 806, 812 (2004).

---

8. In *(Charles) Pierce,* 515 Pa. 153, 527 A.2d 973, this Court recognized that the *Strickland* test was the proper test to evaluate ineffectiveness claims raised under the Pennsylvania Constitution. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Third Circuit has likewise recognized that Pennsylvania's standard for assessing claims of counsel ineffectiveness is materially identical to *Strickland. Werts v. Vaughn,* 228 F.3d 178, 203–04 (3d Cir.2000). Although the Pennsylvania test for ineffectiveness is the same as *Strickland's* two-part performance and prejudice standard, in application this Court has characterized the test as tripartite, by dividing the performance element into two distinct parts, *i.e.,* arguable merit and lack of reasonable basis. *Commonwealth v. (Aaron) Jones,* 571 Pa.112, 811 A.2d 994 (2002).

Although we have held that claims of trial counsel's ineffectiveness raised for the first time on collateral review will no longer be deemed waived, *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 738 (2002), that holding does not apply here because Appellant's direct appeal concluded prior to *Grant*. We will therefore analyze Appellant's claims of ineffective assistance of counsel under the pre-*Grant* framework, under which a petitioner cannot invoke substantive merits review of a waived claim of ineffective assistance of trial counsel by simply appending a conclusory assertion that all intervening counsel were ineffective for failing to raise it. *See D'Amato,* 856 A.2d at 812. Rather, the only claim over which the PCRA court retains cognizance is that of appellate counsel's ineffectiveness. *Commonwealth v. Rush,* 576 Pa. 3, 838 A.2d 651, 656 (2003). Appellant must therefore present argument as to each layer of ineffectiveness, establishing all three prongs of the ineffectiveness standard for each attorney. *See Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1022 (2003) ("[I]n order for a petitioner to properly raise and prevail on a layered ineffectiveness claim, he must **plead, present,** and **prove**" the ineffectiveness of appellate counsel) (emphasis in original); *(Craig) Williams,* 782 A.2d at 525 ("PCRA counsel must, in pleadings and briefs, undertake to develop, to the extent possible, the nature of the claim asserted with respect to each individual facet of a layered ineffectiveness claim, including that which relates to appellate counsel."). A layered claim of appellate counsel's ineffectiveness relates back to the actions of trial counsel, so that the three-prong test for trial counsel's ineffectiveness, if satisfied, supplies the arguable merit prong of the claim of appellate counsel's ineffectiveness. *Id.* Because this Court had not been entirely clear as to what is required of a PCRA petitioner seeking to plead and prove a layered claim of ineffectiveness, we indicated in *McGill* a general preference to remand to the PCRA court for further development in circumstances where a petitioner has not properly layered the claims. A remand is unnecessary, however, where the post-conviction petitioner fails to "thoroughly plead and prove" the underlying allegation that trial counsel was ineffective. *D'Amato,* 856 A.2d at 812.

*Discussion*

Before considering the merits of Appellant's claims, we must first address the Commonwealth's argument that Appellant's claims are not cognizable under the PCRA because they are either waived or previously litigated. The Commonwealth suggests that Appellant does not analyze whether his claims are waived or previously litigated, but argues as if he were raising claims of trial court error on direct appeal. It further argues that in the few instances that Appellant attacks prior counsel's stewardship, he has not properly developed his claims. Specifically, the Commonwealth asserts that Appellant's boilerplate allegations of ineffective assistance of counsel address only the underlying merit prong of trial counsel ineffectiveness and ignore completely the reasonable basis and prejudice prongs. *See (Charles) Pierce,* 527 A.2d at 975. Upon careful consideration of the manner in which Appellant has presented his claims, and in light of the requirements of the PCRA and this Court's precedent interpreting such requirements, we agree with the Commonwealth that two of Appellant's claims are not reviewable. For purposes of our review, we do not examine the issues in the order presented, but will begin with those issues that are waived and, therefore, not reviewable.

## I. Waived Claims

The first of Appellant's waived claims is his assertion that the Commonwealth exercised its peremptory strikes in a racially discriminatory manner in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In a second, separate issue, Appellant asserts that his sentence is the product of racial discrimination. Not only did Appellant not raise these claims on direct appeal, but he did not raise them in his PCRA petition. They are therefore waived. *Commonwealth v. (Rasheed) Williams,* 587 Pa.304, 899 A.2d 1060, 1066 (2006); *Commonwealth v. Wallace,* 555 Pa. 397, 724 A.2d 916, 921 n. 5 (1999) (holding that issues not raised in

PCRA petition cannot be considered for first time on appeal); *see also* 42 Pa.C.S. § 9544(b).[9]

## II. Redaction

Several of Appellant's claims involve the admission of co-defendant Williams' redacted confession as part of the Commonwealth's case against Williams at the joint trial. As noted, at trial, Williams' confession was redacted and Appellant's name was replaced with "X." The court instructed the jury that the statement was only admissible against Williams.

In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Court held that a defendant is deprived of his rights under the Confrontation Clause of the Sixth Amendment when his non-testifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial, because there is a high risk that the jury will consider the statement against the defendant. A jury is ordinarily presumed to be capable of following a court's instruction to consider evidence against one defendant only. *Bruton*, however, created an exception to this rule, holding that the possibility of prejudice is so great that a new trial is required even where the court specifically instructs the jury to use the statement only against the co-defendant:

> there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a code-fendant, who stands accused side-by-side with the defen-

9. Appellant raised his *Batson* claim for the first time before the PCRA court in his post-remand supplement, filed July 1, 2002. Because, as previously noted, our remand to the PCRA court was for the limited purpose of allowing the court to write an opinion in support of its denial of relief, Appellant was not permitted to raise new claims. Our grant of permission to expand the issues to include the *Atkins* claim did not extend to any other unrelated issues. *See Rainey, per curiam* order, December 31, 2002. We do not accept his attempt to amend his PCRA petition following our remand order of December 28, 2001. *Rainey*, 567 Pa. 271, 786 A.2d 942 (2001).

dant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect. . . . The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

*Id.* at 135–36, 88 S.Ct. 1620.

Following *Bruton,* this Court approved of redaction as "an appropriate method of protecting defendant's rights under the *Bruton* decision." *Commonwealth v. Johnson,* 474 Pa. 410, 378 A.2d 859, 860 (1977) ("[i]f a confession can be edited so that it retains its narrative integrity and yet in no way refers to defendant, then use of it does not violate the principles of *Bruton.*"). As with most evidentiary questions, substantial deference must be afforded to the trial court in this regard. *Commonwealth v. Wharton,* 530 Pa. 127, 607 A.2d 710, 716 (1992).

Following our approval of redacted statements, some courts adopted the position that where a co-defendant's redacted confession nevertheless refers to the defendant by "contextual implication," the redacted confession cannot be introduced in a joint trial. *Wharton,* 607 A.2d at 717. The United Supreme Court addressed this argument in *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), where the co-defendant's confession was redacted to remove all reference to the defendant and the trial court instructed the jury to consider the confession only against the co-defendant who made the statement. The defendant argued that, despite the redaction, admission of the statement violated her confrontation rights because it implicated her in the crime when linked with other evidence. The Court expressly rejected the theory of contextual implication, distinguishing between those statements that expressly implicate the defendant and those that become incriminating only when linked to other evidence properly introduced at trial. *Id.* at 208, 107 S.Ct. 1702. When linkage with other evidence was required to implicate the

defendant, the Court held that a proper limiting instruction was sufficient to satisfy *Bruton.*

We have also rejected the contextual implication theory as a blanket rule, finding that such a prohibition would likely make all statements by co-defendants inadmissible. *Wharton,* 607 A.2d at 717; *Commonwealth v. Chestnut,* 511 Pa. 169, 512 A.2d 603 (1986). In rejecting this theory, we acknowledged "there is the danger of prejudice where a codefendant's redacted confession which refers to the defendant by 'contextual implication' is introduced in a joint trial," but reasoned that:

> this danger merely requires the trial court, and the reviewing court, to balance the interests, *i.e.,* the potential prejudice to the defendant versus the probative value of the evidence, the possibility of minimizing the prejudice, and the benefits to the criminal justice system of conducting joint trials.

*Wharton,* 607 A.2d at 717.

With these principles in mind, we review Appellant's assertions that the admission of Williams' statement, redacted to replace references to Appellant with "X," violated his rights under the Confrontation Clause of the United States Constitution as articulated in *Bruton.* The PCRA court found Appellant's *Bruton*-based arguments previously litigated and without merit.

Although it is difficult to deconstruct Appellant's arguments in this regard, it appears that his contention is composed of seven subparts. After presenting his position on the merits of each point, Appellant argues that he is entitled to relief because trial counsel should have objected to admission of the redacted statement and to each of these specific incidents. Appellant also argues that appellate counsel should have challenged each incident on appeal. For ease of discussion, each of the seven sub-arguments will be addressed in turn.

 First, Appellant launches a general attack against the use of the redacted statement, because his name was replaced with an obvious deletion, the letter "X." Appellant grounds his argument against admission of the redacted confession on

the decision of the United States Supreme Court in *Gray v. Maryland,* 523 U.S. 185, 192, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), which followed the trial in this case and held that "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration ... leave statements that, considered as a class, so closely resemble *Bruton's* unredacted statements that, in our view, the law must require the same result." Because Williams' redacted statement substituted "X" for Appellant's name, Appellant argues that relief is appropriate.

We have held that *Gray* represents a new rule of law that should not be applied retroactively to cases, such as Appellant's, which were tried prior to its issuance. *See, e.g., Commonwealth v. Uderra,* 580 Pa. 492, 862 A.2d 74, 89 n. 13 (2004); *Commonwealth v. Lopez,* 559 Pa. 131, 739 A.2d 485, 500 n. 18 (1999). Therefore, Appellant is not entitled to the benefit of *Gray* in this PCRA appeal. Further, Appellant's argument that trial counsel was ineffective for failing to object to admission of the redacted statement is waived as it was not raised during post-trial or direct appellate proceedings in this pre-*Grant* case.[10] See 42 Pa.C.S. § 9544(b); *D'Amato,* 856 A.2d at 812.

The second subpart of Appellant's argument is based on the testimony of Detective Walsh, who, while reading the redacted statement to the jury, broke the redaction by specifically referring to Appellant as "Mike."[11] On direct appeal, we

10. Moreover, we have held that counsel cannot be deemed ineffective for failing to anticipate the *Gray* decision. *Commonwealth v. Gribble,* 580 Pa. 647, 863 A.2d 455, 465 (2004).

11. As we explained on direct appeal, when Detective Walsh read the statement, the following exchange occurred:

Q. "Have you had any contact with 'X' since the murder?"

A. "Yeah, about three days after the murder, I saw 'X' at his house, and I told him to turn himself in, but he just said not to say anything. I even told his mother, too. I told her that 'X' had shot somebody. She wouldn't open the door for me. She just looked out the window."

Q. "Was there anyone with you when you had this conversation with 'X'?"

rejected Appellant's claim of ineffective assistance of counsel with regard to Detective Walsh's reading of Williams' statement. *Rainey*, 656 A.2d at 1332.[12] Therefore, to the extent that Appellant relies on Detective Walsh's testimony to support his argument of a *Bruton* violation, such issue is previously litigated. *See* 42 Pa.C.S. § 9543(a).

The third sub-argument is based on the prosecutor's closing argument.[13] We specifically rejected this argument of contextual implication on direct appeal. *Rainey*, 656 A.2d at 1332.[14]

> A. "My brother-in-law, his name is Mike Williams, black male, 23. He lives in West Philly around that movie, the Capitol."
> * * *
> Q. "Did you see Mike any other time since the murder?"
> Mr. O'Donnell: Objection, your Honor.
> Q. Detective, review that. You ma[y] have read a type [sic].
> A. Excuse me. "Did you see 'X' any other time since the murder?"
> N.T., 12/23/91, at 193–94. *See Rainey*, 656 A.2d at 1331–32. While the statement refers to "Mike Williams," Appellant argues that " 'X' is plainly presented as 'Mike,' *i.e.*, Michael Rainey." Appellant's Brief at 18.

12. In doing so, we noted that trial counsel did, in fact, object to this testimony and requested a mistrial. *Rainey*, 656 A.2d at 1332. We found that trial counsel was not ineffective simply because the trial court refused to accept his arguments. *Id.* Further, we noted that it was not error for the trial court to deny the motion for mistrial because Detective Walsh's remark was *de minimis* and immediately cured by the trial court, the context of the statement did not explicitly implicate Appellant, and there already existed overwhelming evidence identifying Appellant as the killer. *Id.* at n. 5.

13. The prosecutor allegedly improperly referenced Morgan's testimony during closing arguments, which Appellant asserts was an improper use of Williams' statement against Appellant:

> George Williams told the Detective Walsh and Duffy and then Detective Piree that they said "Let's go stick somebody up" and then X went in his house and young boy did too[;] that left me and Eyeball outside[;] then "X" came out and he had changed his coat. When he came out he was wearing a long black leather coat corroborative of what Alvin Morgan testified to. I saw the rifle he had it like down his pants leg.
> N.T., 12/26/91, at 63.

14. In doing so, we noted that trial counsel objected to this incident and again requested a mistrial. *Rainey*, 656 A.2d at 1332. Again, we found that trial counsel was not ineffective and the trial court did not err by denying the motion for mistrial because the remark *did not facially implicate* Appellant, and any inferential or contextual incrimination from a redacted statement did not constitute a violation of Appellant's

Therefore, Appellant's claim pertaining to this portion of the prosecutor's closing argument is previously litigated and not cognizable under the PCRA. *See* 42 Pa.C.S. § 9543(a).

■ The fourth through seventh subparts of Appellant's argument, each of which is based on the theory of contextual implication, fail for the same reasons we rejected his claim of contextual implication based on the prosecutor's closing argument on direct appeal: Appellant cannot demonstrate that he was prejudiced by trial counsel's failure to object to each specific incident. Appellant argues that when these four other specific pieces of evidence were presented at trial, it became obvious that he was "X" referred to in the redacted statement.[15]

As noted, all claims of trial counsel ineffectiveness are waived. See 42 Pa.C.S. § 9544(b); *D'Amato*, 856 A.2d at 812. It is not necessary, however, to remand for further development of these layered claims of ineffectiveness because Appellant cannot demonstrate that he was prejudiced by trial counsel's failure to object to these incidents such that "but for

right to confrontation. *Id.,* (citing *Richardson,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176). Finally, we noted that any prejudice was cured by the trial court's instructions. *Rainey,* 656 A.2d at 1332 n. 5.

**15.** Appellant's fourth subpart is based on the testimony of Lewis, which Appellant asserts signaled that he was "X": Lewis testified that he heard Williams say that he and Appellant were going to collect a debt and were taking Lewis' gun. In the fifth subpart, Appellant complains of Morgan's testimony that Appellant and Williams had asked him not to testify against them. In the sixth subpart, Appellant argues that the prosecutor improperly used the redacted statement against Appellant in the opening argument when the prosecutor informed the jury that the evidence would show that Williams and Appellant planned the robbery together at Appellant's home:

You'll hear how [Appellant]—how George Williams at a later point in the evening of December 7, 1989, came over to the home of [Appellant] and you will hear that there was a discussion on the front porch of [Appellant]'s home between George Williams and [Appellant] about robbing 'the old man down the street.'

N.T., 12/20/91, at 60. Appellant argues that the only evidence that Appellant and Williams discussed robbing the victim was Williams' statement to police. Finally, in the seventh subpart, Appellant argues that in closing, the prosecutor said that Appellant hatched a plan to rob the victim. Again, Appellant argues that the only evidence regarding a conversation to rob the victim was Williams' statement to police.

the act or omission in question, the outcome of the proceedings would have been different." *See Rollins,* 738 A.2d at 441 (quoting *Travaglia,* 661 A.2d at 357). On direct appeal, in rejecting Appellant's contextual implication argument based on the prosecutor's closing argument, we noted that there already existed overwhelming evidence identifying Appellant as the victim's killer. *Rainey,* 656 A.2d at 1332. Specifically, the Commonwealth introduced evidence at trial from Lewis to the effect that he encountered Appellant, Williams, and Morgan on their way to the victim's house. Williams told Lewis that he was going to collect a debt, and Lewis provided Williams with an inoperable gun. Through the testimony of Morgan, the jury heard that Appellant saw the victim with money earlier in the day. That evening, with Morgan present, Appellant brought out and began playing with a sawed-off shotgun, and stated that he was prepared to shoot someone. Later that evening Appellant came onto the front porch with the gun in his pant leg. Appellant, Williams, and Morgan then proceeded to the victim's house, where Morgan saw Appellant withdraw the gun and load it. Morgan further testified to witnessing Appellant shoot and kill the victim. Based on the evidence admitted against Appellant, we do not believe that had counsel objected to each instance of which he presently complains, the outcome of the trial would have been different.[16] *Rollins,* 738 A.2d at 441; *Travaglia,* 661 A.2d at 357.

### III. Severance

Appellant's next substantive claim is that trial counsel ineffectively failed to move pretrial to sever Appellant's trial from his co-defendant's. Before trial, Appellant, acting *pro se,* requested that the trial court sever his trial from that of his co-defendant Williams. Counsel did not assist Appellant with this motion. At a hearing on the motion, Appellant testified that he only requested severance because Williams told him

16. Moreover, as noted, the Supreme Court has expressly rejected the theory of contextual implication, as we did on direct appeal in regard to the prosecutor's closing argument. *Richardson,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176; *Rainey,* 656 A.2d at 1332.

to, and that he did not care whether they had separate trials. The motion was denied. Mid-trial, trial counsel requested severance, which the trial court again denied.

Appellant now claims that trial counsel was ineffective for failing to move to sever his trial from Williams' before trial and that appellate counsel was ineffective for failing to litigate this issue on direct appeal. Specifically, Appellant argues that while Williams' defense was that Appellant was solely responsible for the murder, Appellant maintained his innocence.[17] Thus, Appellant asserts that he was prejudiced by the evidentiary conflict between his defense and that of his co-defendant. In support of his argument, Appellant points to individual pieces of evidence that he claims makes clear that the two defendants were blaming each other for the killing.

The PCRA court rejected this claim of ineffective assistance of counsel based on trial counsel's failure to move to sever Appellant's trial, finding that although Appellant baldly claimed to have been prejudiced by the joint trial because of his co-defendant's inconsistent defense, he did not allege that any evidence admitted at the joint trial was unreliable or false. The PCRA court held this was not a meritorious claim under the PCRA, which requires a petitioner to allege that the prejudice was such as to call into question the reliability of the jury's verdict.

As noted, all allegations relating to trial counsel's stewardship are waived, as they were not raised during post-trial or direct appellate proceedings. *See* 42 Pa.C.S. § 9544(b); *D'Amato*, 856 A.2d at 812. The only claim over which the PCRA court retains cognizance is that of appellate counsel's ineffectiveness. *Rush*, 838 A.2d at 656. The layered claim of appellate counsel's ineffectiveness relates back to the actions of trial counsel in failing to request severance before trial, so that the three-prong test for trial counsel's ineffectiveness, if

17. Presumably, Appellant means that he maintained his innocence of first-degree murder. At the hearing on post-trial motions, trial counsel testified that throughout the trial, he had conceded Appellant's involvement in the Fleming homicide and instead argued that the facts established no more than murder in the second degree.

satisfied, supplies the arguable merit prong of the claim of appellate counsel's ineffectiveness. *See McGill,* 832 A.2d at 1022.

 Examining trial counsel's stewardship, it is clear that this claim fails. Where, as here, the crimes charged against each defendant arise out of the same facts and virtually all of the same evidence is applicable to both defendants, this Court, as well as the United States Supreme Court, have indicated a preference to encourage joint trials to conserve resources, promote judicial economy, and enhance fairness to the defendants:

> It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have ·the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.

*Commonwealth v. Travers,* 564 Pa. 362, 768 A.2d 845, 847 (2001) (quoting *Richardson,* 481 U.S. at 210, 107 S.Ct. 1702). Given this preference, the burden is on defendants to "show a real potential for prejudice rather than mere speculation." *Gribble,* 863 A.2d at 462; *see Commonwealth v. Rivera,* 565 Pa. 289, 773 A.2d .131, 137 (2001); *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367, 1372–73 (1991); Pa.R.Crim.P. 583. "Separate trials of co-defendants should be granted only where the defenses of each are antagonistic to the point where such individual differences are irreconcilable and a joint trial would result in prejudice." *Commonwealth v. Lambert,* 529 Pa. 320, 603 A.2d 568, 573 (1992). Although antagonistic defenses are a factor for a trial court to consider in determining whether to grant a motion to sever, "the fact that defendants have conflicting versions of what took place, or the extent to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily

determined if all are tried together." [18] *Gribble,* 863 A.2d at 462 (quoting *Chester,* 587 A.2d at 1373).

We agree with the PCRA court that Appellant has failed to demonstrate that he was prejudiced by counsel's failure to move for severance before trial. As we noted on direct appeal, overwhelming evidence identified Appellant as the victim's killer. *Rainey,* 656 A.2d at 1332. Specifically, the Commonwealth introduced evidence at trial from Lewis to the effect that he encountered Appellant, Williams, and Morgan on their way to the victim's house. Williams told Lewis that he was going to collect a debt, and Lewis provided Williams with an inoperable gun. Lewis then watched from a short distance as Appellant and Williams kicked in the victim's door and shot the victim when he came to investigate.

Through Morgan's testimony, the jury heard that Appellant saw the victim with money earlier in the day. That evening, with Morgan present, Appellant brought out and began playing with a sawed-off shotgun, and stated that he was prepared to shoot someone if necessary. Later that evening, Appellant came onto the front porch with the gun in his pants leg. Appellant, Williams, and Morgan then proceeded to the victim's house, where Morgan saw Appellant withdraw the gun and load it. Morgan further testified to witnessing Appellant shoot and kill the victim.

The only way we could now hold that trial counsel was ineffective for failing to request severance would be to determine that Appellant was so prejudiced by counsel's failure in

---

**18.** We note that it is not clear, as Appellant asserts, that his defense was antagonistic to Williams'. Contrary to Appellant's assertions, the record reveals that the evidence adduced at trial did not conflict concerning the roles of each defendant. Williams' defense was built on casting Appellant as the shooter, whereas, although Appellant did not admit to shooting the victim, his defense was premised on the murder being second-or third-degree, rather than first-degree. Far from being antagonistic, these defenses were actually in agreement. *See Commonwealth v. Rivera,* 565 Pa. 289, 773 A.2d 131, 137 (2001) (finding that the defendant's and co-defendant's accounts were not in conflict so as to warrant severance in prosecution for first-degree murder and related offenses where all three co-defendants agreed in their statements that defendant was the shooter, and that their only plan had been to rob the victims, not to kill one of them).

this regard that "but for the act or omission in question, the outcome of the proceedings would have been different." *See Rollins,* 738 A.2d at 441 (quoting *Travaglia,* 661 A.2d at 357). However, because of the "overwhelming evidence identifying [A]ppellant as the victim's killer," as described on direct appeal, Appellant cannot make this showing. *Rainey,* 656 A.2d at 1332 n. 5.

In advancing his argument, Appellant relies on *Commonwealth v. Boykin,* 501 Pa. 250, 460 A.2d 1101 (1983). There, the jury was unable to reach a verdict in the defendant's first trial. When the defendant was retried, he was tried with his former co-defendant and two new co-defendants from charges that arose during the same criminal episode. Following conviction, the Superior Court determined that trial counsel was not ineffective for failing to present a timely motion to sever. We reversed, finding that trial counsel lacked a reasonable basis for filing an untimely motion to sever.

Our opinion in *Boykin* hinged on former Pa.R.Crim.P. 305, which required that pre-trial applications be made at least ten days prior to trial. Counsel filed the motion late, which the trial court denied without reaching the merits. We were unable to conclude that a motion to sever would have been without merit. Thus, our analysis focused on whether counsel had a reasonable basis designed to effectuate his client's interest for not making the motion at least ten days before trial. We determined that counsel's untimely request for severance reflected his judgment that a separate trial would advance the interests of his client. In light of that judgment, we saw no reasonable basis for belatedly seeking that remedy.

The Court in *Boykin* focused on the lack of reasonable basis for counsel's actions, whereas here we have determined that Appellant was not prejudiced by counsel's failure to seek severance. "If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs [of the ineffectiveness test] have been met." *Albrecht,* 720 A.2d at 701. Therefore, this claim fails.

## IV. Alibi Evidence

Next, Appellant asserts that he was denied effective assistance of counsel when trial counsel failed to reasonably investigate, develop, and present five alibi witnesses (Ruth Weary and her four children, Rufus Weary, James Weary, Janet Weary, and Tammy Connor), who Appellant asserts would have testified that on the night of the murder, Appellant spent the night at their house with them and did not leave.

Appellant asserts that he made trial counsel aware of this alibi before trial and that Ruth Weary made several unreturned phone calls to counsel to explain Appellant's alibi and her family's willingness to testify. He further asserts that had counsel presented these witnesses, they would have testified that Appellant never owned or wore a long coat, but that Williams did, and that Williams was a neighborhood bully and not friends with Appellant.

At the hearing on post-trial motions, trial counsel testified that although Appellant mentioned the possibility of presenting alibi witnesses, "he had never in my discussions persuaded me that he had witnesses, reliable witnesses to alibi." N.T., 9/28/93, at 13. Based on this testimony, the PCRA court rejected Appellant's claim, finding that trial counsel made a strategic decision not to offer the alibi witnesses because of the strength of the evidence against Appellant. Further, the PCRA court concluded that because this Court, on direct appeal, "found that trial counsel was not ineffective for pursuing a strategy of admitting Defendant's involvement in the crime but arguing for a lesser degree of murder," this claim was previously litigated. PCRA op. at 10.

Appellant contests this conclusion, arguing that while the decision not to investigate and present alibi witnesses may have been strategic, it was not reasonable. Further, to the extent counsel based his decision on Appellant's failure to convince him that the witnesses were reliable, Appellant argues that it was not his responsibility to persuade counsel that this defense would succeed. Rather, Appellant argues that it

is counsel's responsibility to investigate all alternative defenses. We disagree.

An alibi is "a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Commonwealth v. Roxberry*, 529 Pa. 160, 602 A.2d 826, 827 (1992) (quoting *Commonwealth v. (Rodney) Jones*, 529 Pa. 149, 602 A.2d 820, 822 (1992)). To show ineffectiveness for not presenting alibi evidence, Appellant must establish that counsel could have no reasonable basis for his act or omission. *See Commonwealth v. Carpenter*, 555 Pa. 434, 725 A.2d 154, 163 (1999).

A reasonable basis for not introducing this purported alibi evidence is readily apparent from the record. When Appellant was arrested, he provided a statement to police admitting that he was present when the robbery of Fleming occurred.[19] He told the police that he knocked on the door at Williams' request, but that he was walking away when Williams shot the victim. At trial, counsel unsuccessfully moved to suppress this statement. Although the Commonwealth ultimately did not introduce the statement in its case-in-chief, it is reasonable to assume that it would have introduced the statement in rebuttal to Appellant's attempt to establish an alibi. Counsel was not ineffective for declining to open the door for Appellant's statement to police. *See Commonwealth v. Hardcastle*, 549 Pa. 450, 701 A.2d 541, 545 n. 4 (1997) (finding that counsel was not ineffective for failing to present alibi defense that contradicted the defendant's own statements).

19. The Commonwealth has filed a motion to correct an omission in the record, notifying us that Appellant's statement to the police is not in the certified record and providing such statement. The statement was introduced in the hearing on Appellant's motion to suppress it, and was moved into the record at the conclusion of the hearing. We agree with the Commonwealth that defendant's statement is essential to a complete review of Appellant's issues, and therefore grant the motion to correct an omission in the record pursuant to Pa.R.A.P. 1926 ("If anything material to either party is omitted from the record by error or accident or is misstated therein, ... the appellate court, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted.").

Moreover, counsel pursued a trial strategy of conceding Appellant's involvement in the crime but arguing that the facts of the case did not demonstrate first-degree murder. Appellant's purported alibi evidence would have contradicted this defense strategy, which was reasonable given the testimony of Lewis and Morgan. *See Carpenter*, 725 A.2d at 163 (finding counsel was not ineffective for failing to call as alibi witness a witness who would have contradicted defense strategy); *Hardcastle*, 549 Pa. 450, 701 A.2d 541 (same). We will not find counsel ineffective for failing to present these witnesses. Therefore, Appellant is not entitled to relief on this claim.

## V. Background and mental health evidence

Appellant claims that trial counsel was ineffective for failing to investigate his background and mental health history, which he claims would have supported a challenge to his competency to stand trial, a diminished capacity defense, and, in the penalty phase, a mitigating factor. Appellant supports this argument with declarations from his mother, aunt, step-father, five friends, and a summary of a mental health evaluation performed by Jethro Toomer, Ph.D.[20]

To summarize, the declarations of Appellant's friends and family indicate that Appellant was abandoned by his father and that his mother worked long hours. Growing up, Appellant had a history of head injuries, beginning when he was struck by a car while on his bicycle and progressing through his teenage years, when Appellant took up boxing and, as a result, was frequently beaten on the face and head. He had lasting symptoms from these head injuries including headaches, dizziness, jumpiness, and blackouts. Appellant was also mentally slow, unable to concentrate, childlike, easily confused,

20. In addition, Appellant relies on a letter by Barry Crown, Ph.D., dated June 18, 2004. This letter, dated six years after the PCRA court dismissed Appellant's petition, was not before the PCRA court when it reviewed the petition. As this letter was not before the PCRA court, we will not consider it. *See Matter of One Hundred or More Qualified Electors of Municipality of Clairton, County of Allegheny, Com.*, 546 Pa. 126, 683 A.2d 283, 286 (1996) (refusing to consider a letter that was not part of the record before the trial court where appellants did not seek to modify or supplement the record on appeal pursuant to Pa.R.A.P 1926).

accident-prone, performed poorly in school, and was unable to hold a job.

In support of his allegation of a history of mental impairments, Appellant relies on the declaration of Dr. Toomer, a licensed clinical psychologist, who evaluated Appellant, reviewed court documents and declarations, and administered psychological tests to Appellant in 1996. Dr. Toomer concluded that Appellant has "a significant history of dysfunctional development and mental illness," and that "[e]valuation and test results reflect numerous mental and psychological deficits of a mitigating nature." Toomer Declaration at 2. Noting his history of head trauma, Dr. Toomer opined that Appellant has "serious cognitive impairments:"

> His history reveals that his cognitive impairments have undermined his functioning throughout his life. There is deficient intellectual functioning, characterized by weakness in reasoning, logical thinking, comprehension, communication, vocabulary, concentration and long range planning. Reasoning is impaired and concrete and he had deficits in higher thought processes that are prominent. He has manifested behavior consistent with petit mal epileptic seizures, including periods when he would 'blank' out, as described by family. His deficiencies include poor information processing and deficient response latency. He has functional and adaptive deficiencies that seriously impair him and are symptomatic of underlying neurological involvement (brain damage).

*Id.* The family's descriptions of Appellant, concluded Dr. Toomer, were consisted with what one would expect in a cognitively impaired individual, and were consisted with the results of his testing. Dr. Toomer's psychological testing and evaluation revealed "symptomatology reflecting Schizophrenia, Paranoia type and Bipolar Affective Disorder." *Id.* at 3. In Dr. Toomer's opinion, these deficiencies and impairments provide mental health mitigation evidence that could have been provided to the court at trial. Finally, he offered that a competency evaluation would have been appropriate at the time of trial.

Appellant asserts that trial counsel was ineffective because he never asked him or anyone else about his background or mental health history, never sought an expert evaluation, and did not develop or present any of this background or mental health evidence to argue that Appellant was incompetent to stand trial, to assert defense of diminished capacity, or as mitigation evidence in the penalty phase.

## A. Competency

██ Regarding his competency to stand trial, Appellant merely asserts "there should have been a competency evaluation and hearing at the time of the original trial court proceedings." Appellant's Brief at 47. Due to his alleged cognitive impairments, Appellant asserts that the failure to have a competency evaluation and hearing "undermines confidence in Appellant's competency to stand trial, and thus establishes prejudice as to all of the convictions and sentences." Appellant's Brief at 49. Before the PCRA court, he alleged that he was incompetent to stand trial. In his brief to this Court, however, he does not allege that he was incompetent to stand trial, only that counsel should have sought a competency evaluation and hearing. The PCRA court concluded that counsel was not ineffective for failing to investigate Appellant's competency to stand trial because Appellant stated on the record that he understood his rights and the proceedings against him, indicating that he was, in fact, competent to stand trial. N.T., 12/21/91, at 45–46.

 Appellant is required to "plead and prove by a preponderance of the evidence ... that the conviction or sentence resulted from ... ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Robinson*, 583 Pa. 358, 877 A.2d 433, 439 (2005); *McGill*, 832 A.2d at 1020. A defendant is presumed to be competent to stand trial. *Commonwealth v. duPont*, 545 Pa. 564, 681 A.2d 1328, 1330–31 (1996). Thus, the burden is on Appellant to prove, by a preponderance of the evidence, that

he was incompetent to stand trial. *See Commonwealth v. Brown*, 582 Pa. 461, 872 A.2d 1139, 1156 (2005). In order to prove that he was incompetent, Appellant must establish that he was either unable to understand the nature of the proceedings against him or to participate in his own defense. *Id.*; *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1270 (1989).

Appellant does not assert that he was unable to understand the nature of the proceedings against him. *See* 50 P.S. § 7402(a) (a person is incompetent to stand trial when he is "substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense"); *Brown*, 872 A.2d at 1156; *Commonwealth v. (Terrance) Williams*, 581 Pa.57, 863 A.2d 505, 514 (2004); *Hughes*, 555 A.2d at 1270. Therefore, even if counsel had no reasonable basis to decline to pursue a competency evaluation, Appellant fails to articulate how he was prejudiced because he cannot establish that had counsel requested an evaluation and hearing, the outcome of the guilt or sentencing phase would have changed. The 1996 declaration submitted by Dr. Toomer merely concludes that "[g]iven [Appellant]'s deficits and impairments, a competency evaluation would have been appropriate at the time of trial proceedings." Declaration of Dr. Toomer at 3. Notably, Dr. Toomer does not claim that the result of a competency evaluation would have demonstrated that Appellant's various mental deficiencies prevented him from understanding the proceedings against him. This is insufficient to satisfy Appellant's burden to prove that he was, in fact, incompetent to stand trial. *See Brown*, 872 A.2d at 1156. We perceive no error in the PCRA court's dismissal of this claim, and decline to find that counsel was ineffective for failing to seek a competency hearing. As Appellant has failed to establish the ineffectiveness of trial counsel, this necessarily defeats his claim of appellate counsel ineffectiveness. *McGill*, 832 A.2d at 1023.

## B. Diminished Capacity

Similarly, and based on the same evidence, Appellant asserts that "the fact that Appellant's mental and cognitive

impairments establish that he has a diminished capacity undermines confidence in the first-degree murder conviction, thus establishing prejudice as to the murder conviction and death sentence." Appellant's Brief at 49. He does not analyze this claim at all, or discuss it specifically in terms of ineffective assistance of counsel. Instead, he grounds his argument on Dr. Toomer's assertion that Appellant "lacks the capacity for higher order thought processes." Declaration of Dr. Toomer at 3.

The PCRA court found nothing in the record to support Appellant's contention that he has a mental illness that impaired his ability to deliberate or his ability to premeditate at the time of the murder, and concluded that counsel was not ineffective for failing to present a diminished capacity defense.

A diminished capacity defense requires that a defendant establish he had a mental defect at the time of a murder that affected his cognitive abilities of deliberation and premeditation necessary to formulate specific intent to kill. *Commonwealth v. McCullum*, 558 Pa. 590, 738 A.2d 1007, 1009 (1999). This defense requires the defendant to admit that he killed the victim. *Commonwealth v. Johnson*, 572 Pa. 283, 815 A.2d 563, 578 (2002); *Commonwealth v. Laird*, 555 Pa. 629, 726 A.2d 346, 353 (1999) ("We have held that '[a] defense of diminished capacity is only available to a defendant who admits criminal liability but contests the degree of guilt'.") (citing *Commonwealth v. Weaver*, 500 Pa. 439, 457 A.2d 505 (1983)).

Trial counsel testified following post-trial motions that his trial strategy had been to concede involvement in the murder, but to argue that the facts supported no more that second-degree murder. Trial counsel also attempted to undermine the eyewitness' testimony identifying Appellant as the shooter. In contrast, a diminished capacity defense would have required Appellant to admit that he shot the victim and attempt to show that he lacked the specific intent to kill, something Appellant was unwilling to do. In fact, Appellant still claims he is innocent. Counsel's strategic decision to avoid conviction

for first-degree murder rather than pursue a diminished capacity defense does not constitute ineffective assistance of counsel. *See Johnson,* 815 A.2d at 579 (declining to find counsel ineffective for not presenting a diminished capacity defense where the defendant did not admit that he killed the victim); *Commonwealth v. (James) Jones,* 539 Pa.222, 651 A.2d 1101, 1109 (1994) ("[C]ounsel's strategic decision to seek acquittal rather than pursue a diminished capacity defense does not constitute ineffective assistance if there is a reasonable basis for the strategy chosen"); *Commonwealth v. Paolello,* 542 Pa. 47, 665 A.2d 439, 454 (1995) (where "the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective").

## C. Mitigation

We must next determine whether appellate counsel was ineffective for failing to raise trial counsel's failure to investigate and present mitigating evidence at Appellant's penalty phase. Again relying on the declarations of friends and family and Dr. Toomer, Appellant asserts that trial counsel was ineffective for failing to interview his friends and family to obtain information on his background and mental health. He asserts that his life history provides significant background mitigation and that his history of brain damage, thought disorder, and psychological impairments provide significant mental health mitigation. If trial counsel had investigated and presented this evidence as mitigation, Appellant argues that it would have influenced the jury's appraisal of his culpability and led to a different result. *See Rompilla v. Beard,* 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) ("The undiscovered mitigating evidence, taken as a whole, might well have influenced the jury's appraisal of Rompilla's culpability, and the likelihood of a different result had the evidence gone in is sufficient to undermine confidence in the outcome actually reached at sentencing." (internal citations omitted)).

The PCRA court rejected this claim, finding that the declarations from friends and family are "of questionable accuracy"

and "without medical corroboration." PCRA Ct. Op. at 10. Regarding Dr. Toomer's declaration, the PCRA court concluded that it was "conclusory and general, based mainly on anecdotal evidence." *Id.* at 11. Further, the PCRA court noted that Appellant did not allege that trial counsel was aware of his alleged infirmities at the time of sentence. *See Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373, 383 (1986) ("The reasonableness of counsel's investigative decisions depends critically on the information supplied by the defendant."). Without an allegation that trial counsel was aware of Appellant's supposed mental limitations, the PCRA court held that Appellant has no basis for claiming counsel was ineffective for failing to present this mitigation evidence. The court further held that Appellant could not demonstrate ineffective assistance of counsel because it was not clear how testimony to this effect could have swayed the jury to impose a different sentence, and surmised that trial counsel chose not to present this evidence in an effort to keep the jury from hearing evidence that Appellant was unable to control himself and was a continuing danger to others.

Appellant argues that it is impossible to attribute a reasonable basis to trial counsel's lack of investigation because there was no PCRA hearing at which counsel could explain his course of conduct. Moreover, Appellant argues that even if counsel pursued the strategy the PCRA court attributed to him, it would not be reasonable because counsel did not conduct an investigation upon which a reasonable strategic decision could be based. Further, Appellant asserts that the reason counsel was not aware of this evidence was because he did not reasonably investigate.

The Commonwealth asserts that Appellant's failure to indicate that he informed trial counsel of his alleged background and mental health is fatal to this claim. To the contrary, the Commonwealth argues that under oath, during a colloquy regarding his right to testify, Appellant denied having ever been treated for mental health problems. N.T., 12/26/91 at 45–46. Agreeing with the PCRA court, the Commonwealth argues that "[t]he reasonableness of counsel's investigative

decisions depends critically on the information supplied by the defendant," *Peterkin,* 513 A.2d at 383 (Pa.1986), and that we should reject this claim because there is no evidence that counsel had any reason to suspect psychological problems. *See Bracey,* 795 A.2d at 944 (finding trial counsel was not ineffective for failing to present evidence of alleged abuse where neither defendant nor his family informed counsel of the abuse); *Commonwealth v. Miller,* 560 Pa. 500, 746 A.2d 592, 601 (2000) (same); *Commonwealth v. Uderra,* 550 Pa. 389, 706 A.2d 334, 339–40 (1998) ("Appellant's own failure to cooperate with counsel in order to apprise him of allegedly relevant information cannot now provide a basis for an ineffectiveness claim."). Moreover, the Commonwealth argues that counsel could reasonably have avoided presenting such evidence so that it would not backfire and cause the jury to conclude that Appellant was a dangerous person who might kill again.

Appellant's claim of ineffective assistance of appellate counsel on direct appeal derives from Appellant's waived claim of ineffective assistance of trial counsel, and the underlying claim is appropriately considered as a component of the essential analysis. *Commonwealth v. Gorby,* 587 Pa. 417, 900 A.2d 346, 361 (2006); *McGill,* 832 A.2d at 1022–23. It is well established that trial counsel has an "obligation to conduct a thorough investigation of the defendant's background." *Gorby,* 787 A.2d at 371–72; *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). This obligation includes the duty "to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." *Commonwealth v. Hughes,* 581 Pa. 274, 865 A.2d 761, 813 (2004) (quoting *Wiggins v. Smith,* 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). The reasonableness of a particular investigation depends upon evidence known to counsel, as well as evidence that would cause a reasonable attorney to conduct a further investigation. *Hughes,* 865 A.2d at 813–14; *Wiggins,* 539 U.S. at 527, 123 S.Ct. 2527. At the same time, counsel's obligations do not require an investigation into "every conceivable line of

mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." *Id.* at 533, 123 S.Ct. 2527.

In the recent decision in *Hughes,* 865 A.2d at 761, the appellant appealed from the dismissal of his PCRA petition without a hearing where he alleged ineffective assistance of trial counsel for failing to investigate, develop, and present mitigation evidence in the form of his traumatic childhood and mental health. To support his claim, the appellant submitted several mental health evaluations indicating cognitive impairments and affidavits from family members who would testify that the appellant was raised in an abusive environment. *Id.* at 812. We noted that trial counsel consulted with a doctor in connection with a competency hearing for purposes of constructing a possible defense, and the testimony of the appellant's grandmother and uncle at trial should have prompted counsel's awareness of the appellant's abusive childhood (specifically, the testimony indicated that the appellant was abandoned by his mother, raised by his grandmother, and had the intellectual capacity of a two-year-old). *Id.* However, because there was no hearing before the PCRA court, the record did not reflect the degree of counsel's awareness or whether the decision to forgo presentation of such evidence was the result of strategic or tactical concerns. *Id.* We concluded that the appellant's proffered evidence, if believed, would have been sufficient to implicate the mental health mitigators, namely, that the appellant was under the influence of an extreme mental or emotional disturbance, that his capacity to appreciate the criminality of his conduct or conform it to the requirements of the law was substantially impaired, and as evidence under the catch-all mitigator. *Id.* at 814; *see* 42 Pa.C.S. § 9711(e)(2), (3), and (8). In light of such evidence, we found that a genuine factual dispute existed "with respect to counsel's awareness of the proof, the nature and extent of his investigation, and whether the decision to not present the evidence was founded upon reasonable strategic concerns." *Hughes,* 865 A.2d at 815. Thus, we remanded for an eviden-

tiary hearing to allow the appellant to develop his claim and assess the reasonableness of counsel's actions.

*Hughes* is instructive in resolving the claim presently before us. During the penalty phase, the Commonwealth stipulated to two mitigating circumstances. In addition, trial counsel presented the testimony of Appellant's mother in support of a third, the catch-all mitigator. 42 Pa.C.S. § 9711(e)(8). Appellant's mother pleaded for her son's life and testified that she had to work long hours, leaving Appellant alone to care for his siblings. The record indicates that at the very least, the testimony of Appellant's mother should have prompted counsel's awareness, to some degree, of Appellant's difficult childhood. *See Hughes*, 865 A.2d at 814. As in *Hughes*, our examination of this claim is hampered by the lack of testimony from trial counsel regarding the degree of counsel's awareness of Appellant's allegations of a dysfunctional family background and mental health. Nor do we know the extent of trial counsel's investigation or, if deficient, the reasons he did not interview friends or family or obtain a mental health evaluation. For instance, we do not know whether and to what extent counsel interviewed Appellant's mother, the sole witness he presented in the penalty phase, or whether he obtained medical, educational, or social history records. Moreover, it does not appear that counsel consulted a mental-health professional during his investigation and preparation.

The proffered evidence indicates Appellant's dysfunctional background, his low level of functioning, and, most significantly, evidence of schizophrenia, paranoia, and bipolar affective disorder. This proof, if believed by the jury, would have been sufficient to implicate the mental health mitigator and potentially affect the weight the jury ascribed to the catch-all mitigator. *See Hughes*, 865 A.2d at 815 ("[T]he penalty-phase determination is a qualitative one ... in which the weight and detail of a particular presentation is likely to impact upon the deliberative process."). We simply cannot ascertain at this juncture the extent of trial counsel's awareness of the proof, the nature and extent of his investigation and preparation for the penalty phase, or whether the decision not to investigate

and present this evidence was the result of reasonable strategic concerns. *Hughes,* 865 A.2d at 815.

We cannot accept the PCRA court's reasoning in support of its rejection of this claim that trial counsel chose not to present mitigation evidence in an effort to keep the jury from viewing Appellant as a continuing danger to others. We do not know what counsel chose, because counsel did not testify at a hearing regarding his motives. Additionally, the cases on which the Commonwealth relies in support of its argument that Appellant's failure to allege that he informed counsel of his childhood background and mental health is fatal to his claim are factually distinguishable. *See Bracey,* 795 A.2d at 944; *Miller,* 746 A.2d at 601; *Uderra,* 706 A.2d at 339–40. In each of those cases, there was a hearing at which counsel testified regarding the extent of his conversations with the appellant and the appellant's family members. In *Bracey,* 795 A.2d at 944, we found that counsel could not be deemed ineffective for failing to present mitigation evidence of abuse because the appellant and his family failed to reveal the abuse to counsel during their consultations with him. *Id.* This conclusion was based on counsel's PCRA testimony, where counsel testified that he met with members of the appellant's family several times and that, although he asked questions about the appellant's background, no one indicated during the interviews that the appellant had been abused as a child and the appellant himself did not inform counsel of any physical abuse.

Similarly, in *Miller,* 746 A.2d at 601, the appellant's trial counsel stated at the PCRA hearing that he met with the appellant's family "over and over again," but the family was very uncooperative in terms of providing counsel with information that he could use in mitigation. *Id.* Further, the appellant himself did not inform his counsel of the sexual abuse that occurred in the household. *Id.* Because the appellant and his family failed to reveal the extent of abuse in the family home, we held that counsel could not be ineffective for failing to present evidence of the pervasive abuse at the appellant's trial. *Id.*

Finally, in *Uderra*, 706 A.2d at 339–40, the appellant claimed on direct appeal that counsel was ineffective for allegedly failing to investigate whether the appellant had used drugs in the past, whether the appellant was under the influence of drugs at the time of the murder, and whether the appellant had a history of psychological problems. We determined that contrary to the appellant's allegations, trial counsel conferred with the appellant numerous times prior to and during trial, and counsel's investigation for potential witnesses was hampered by the appellant's own failure to provide information about the identity and location of his family members. *Id.* Further, counsel testified at the appellant's post-trial motion hearing that the appellant did not inform him of any alleged drug use until after the trial had already commenced, at which time he determined that it did not establish that the appellant was impaired at the time of the murder. *Id.* Finally, counsel testified that the appellant never revealed his alleged history of psychological problems. Based on the record and trial counsel's testimony, we concluded that the appellant's own failure to cooperate with counsel in order to apprise him of allegedly relevant information could not provide a basis for the ineffectiveness claim.

In contrast to those cases, trial counsel here has not had the opportunity to testify and explain why he did not conduct an investigation. Thus, an evidentiary hearing is required to allow Appellant the opportunity to develop this claim and challenge the reasonableness of counsel's actions. *See Hughes*, 865 A.2d at 815. We will remand for this purpose only.

## VI. *Simmons* Charge

In his next claim, Appellant argues that the trial court erred by failing to instruct the jury that if it sentenced Appellant to life in prison that he would be incarcerated for his natural life. Because trial counsel failed to raise this claim, it is waived. 42 Pa.C.S. § 9544(b). Appellant also argues, however, that trial counsel was ineffective for failing to request the trial court to provide this explanation to the jury, and that appellate counsel

was ineffective for failing to litigate this claim on appeal. We will therefore consider whether trial counsel was ineffective for failing to raise this argument at trial. *See Commonwealth v. Spotz*, 587 Pa. 1, 896 A.2d 1191 (2006).

Appellant asserts that during the penalty phase, the prosecutor put Appellant's future dangerousness at issue, which he asserts requires the jury to be informed that a life sentence in Pennsylvania means life without the possibility of parole. *See Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (plurality) (holding that if a prosecutor argues a capital defendant's future dangerousness at a sentencing trial, the defendant may request and should be granted a jury instruction that a penalty of life in prison will render the defendant ineligible for parole); *Commonwealth v. Carson*, 590 Pa. 501, 913 A.2d 220, 273 (2006) (holding that a *Simmons* instruction is mandated only if the prosecutor places the defendant's future dangerousness in issue and the defendant has requested that the trial court issue the instruction). The PCRA court rejected this claim, finding that *Simmons* announced a new rule of law, *see Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877, 888 (1995), to which Appellant is not entitled to retroactive application because trial counsel failed to preserve this issue. *See Commonwealth v. Smith*, 544 Pa. 219, 675 A.2d 1221, 1232 (1996) (holding that *Simmons* does not apply retroactively and that former counsel was not ineffective for failing to predict a change in the law). We agree.

 Under Pennsylvania law at the time of Appellant's trial, courts were prohibited from instructing juries on the possibility of parole. *See Hughes*, 865 A.2d at 810; *Commonwealth v. Henry*, 524 Pa. 135, 569 A.2d 929, 941 (1990) (stating that parole, pardon, and commutation should not enter into capital jury deliberations). It was not until 1994, three years after Appellant's trial, that the United States Supreme Court decided *Simmons* and held that in certain circumstances juries should be instructed whether life sentences include the possibility of parole. *See Simmons*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133. Both the United States Supreme Court and this Court have held that *Simmons* announced a

new rule of law that does not apply retroactively. *See O'Dell v. Netherland*, 521 U.S. 151, 157–67, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (holding that *Simmons* announced a new rule of law for which *habeas corpus* relief is not available retroactively); *Commonwealth v. Duffey*, 585 Pa. 493, 889 A.2d 56, 71 (2005). Because counsel cannot be deemed ineffective for failing to predict a change in the law, the failure to request an instruction in this case does not constitute grounds for relief. *Hughes*, 865 A.2d at 810; *Christy*, 656 A.2d at 889.

## VII. Burden of Proof

 Next, Appellant argues that the jury instructions regarding the burden of proof for mitigating circumstances were unconstitutional. The court instructed the jury that aggravating circumstances must be proved beyond a reasonable doubt, and that mitigating circumstances must be proved by a "preponderance of the evidence, that is, by a greater weight of the evidence." Appellant, focusing on this phrase to the exclusion of the rest of the jury instructions, asserts that these instructions conveyed to the jury that a preponderance standard is a heavier burden than proof beyond a reasonable doubt. In this regard, Appellant argues that trial counsel was deficient for failing to object to these instructions, and appellate counsel was ineffective for failing to raise this issue.

 The PCRA court found that Appellant was not prejudiced by these instructions as demonstrated by the fact that the jury found the existence of all three mitigating factors offered by the defense. The trial court possessed broad discretion in phrasing its instructions to the jury and was permitted to choose its own wording so long as the law was clearly, adequately and accurately presented to the jury for consideration. *Commonwealth v. (Roy) Williams*, 557 Pa.207, 732 A.2d 1167, 1187 (1999); *Commonwealth v. Hawkins*, 549 Pa. 352, 701 A.2d 492, 511 (1997), *cert. denied*, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998). Furthermore, a trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law. *(Roy) Williams*, 732 A.2d at 1187; *Commonwealth v. Ohle*, 503 Pa.

566, 470 A.2d 61, 70 (1983). It is axiomatic that, in reviewing a challenged jury instruction, an appellate court must consider the charge in its entirety, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. *Commonwealth v. Jones,* 546 Pa. 161, 683 A.2d 1181, 1196 (1996). Instructions will be upheld if they adequately and accurately reflect the law and are sufficient to guide the jury properly in its deliberations. *Commonwealth v. Rivera,* 565 Pa. 289, 773 A.2d 131, 139 (2001); *Commonwealth v. Gibson,* 553 Pa. 648, 720 A.2d 473, 481 (1998). In addition to the sentence focused on by Appellant, the trial court also instructed the jury as follows:

The Commonwealth must prove the aggravating circumstance beyond a reasonable doubt. This does not mean that the Commonwealth must prove the aggravating circumstance beyond all doubt or to a mathematical certainty. A reasonable doubt is the kind of doubt that would cause a reasonable and sensible person to hesitate before acting upon an important matter in his own affairs. A reasonable doubt must be a real doubt. It may not be one that a juror imagines or makes up to avoid carrying out an unpleasant duty.

In contrast, the defendant must prove mitigating circumstances. However, he only has to prove a mitigating circumstance by a preponderance of the evidence; that is, by the greater weight of the evidence. In this case there is a verdict stipulation that at least two mitigating circumstances exist.

\* \* \*

 The different treatment of aggravating and mitigating circumstances is one of the law's safeguards against an unjust death sentence. It gives a defendant the full benefit of any mitigating circumstances. This procedure is related to the burden of proof requirement. Remember, the Commonwealth must prove an aggravating circumstance beyond a reasonable doubt while the defendant *only* has to prove mitigating circumstances by a preponderance of the evidence.

(N.T. 12/30/91, 31–34) (emphasis added). Thus, when viewed in context as a whole, the trial court's instructions regarding the respective burdens plainly informed the jury concerning the relative burdens of proof applicable to aggravating circumstances and mitigating circumstances and clearly conveyed that Appellant bore the lesser burden of the preponderance of the evidence. Therefore, counsel cannot be deemed ineffective for failing to object to a proper charge. Accordingly, no relief is due on this claim. *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1187 (1999) (rejecting an ineffectiveness claimed based on the same jury instructions).

## VIII. Written Jury Instructions

■ Appellant next asserts that by providing the jury with written directions for completing the sentencing verdict slip, the trial court improperly sent the jury out to deliberate with "written instructions" in violation of *Commonwealth v. Oleynik*, 524 Pa. 41, 568 A.2d 1238 (1990) (condemning written jury instructions defining legal causation, third-degree murder, and involuntary manslaughter). Because Appellant's trial was two years after the decision in *Oleynik*, Appellant asserts that trial counsel was ineffective for failing to object to the written instructions and appellate counsel was ineffective for failing to challenge their use. The PCRA court did not address this issue.

The instructions of which Appellant complains were in connection with how to complete the sentencing verdict slip. In *Commonwealth v. Johnson*, 572 Pa. 283, 815 A.2d 563, 583–84 (2002), we rejected the claim Appellant now advances. There, as here, the written instructions were designed to assist the jury in completing the somewhat complicated verdict forms and did not contain any statements on points of law. In *Oleynik*, in contrast, the court sent out with the jury written instructions on the definitions of legal causation, third-degree murder, and involuntary manslaughter. That situation is obviously distinguishable from *Johnson* and this case, where the instructions did not contain an articulation of points of law, but merely explained to the jury how to fill out the verdict slip.

"Written directions to the jury detailing the procedure for filling out a verdict slip are not subject to interpretations that could potentially prejudice a defendant." *Johnson*, 815 A.2d at 583–584. Therefore, trial counsel was not ineffective for failing to object to the written instructions.

## IX. Proportionality Review

Next, Appellant asserts that this Court did not conduct a meaningful proportionality review of his death sentence on direct appeal as required by 42 Pa.C.S. § 9711(h)(3)(iii). While acknowledging that this claim is previously litigated, Appellant asks this Court to revisit it. Specifically, Appellant alleges that the database maintained by the Administrative Office of Pennsylvania Courts and relied upon by this Court in conducting the proportionality review is flawed and inaccurate.

On direct appeal, we conducted a review of Appellant's sentence pursuant to 42 Pa.C.S. § 9711(h)(3), which requires us to review the sufficiency of the evidence supporting the jury's finding of one aggravating circumstance, and to determine whether the sentence of death imposed was the product of passion, prejudice, or any other arbitrary factor, or was excessive or disproportionate to the penalty imposed in similar cases. *Rainey*, 656 A.2d at 1335. Upon review of the record, we concluded that the jury's conclusion that the murder of Carroll Fleming was committed in the perpetration of a felony was clearly supported by the evidence. In addition, we found no basis on which to conclude that the death sentence was the product of passion, prejudice, or any arbitrary factor, or that such a sentence was disproportionate to the sentences imposed in similar cases. *Id.* Thus, this claim was previously litigated on direct appeal and is not cognizable under the PCRA. *See Albrecht*, 720 A.2d at 708 (finding, on collateral review, that because "[t]his court has already fulfilled its statutory obligation to review Appellant's sentence for proportionality and ruled against him," this issue was beyond the purview of the PCRA because it was previously litigated). The PCRA court properly denied Appellant relief on this claim.

## X. Ineffective assistance of all prior counsel

Next, Appellant argues that trial and appellate counsel's failure "to investigate and research the law and facts relevant to this case, and to make the objections and arguments" presently raised "constitutes prejudicially ineffective assistance of counsel." Appellant's Brief at 77. In baldly asserting the ineffectiveness of all prior counsel, Appellant has failed to develop this claim in any meaningful fashion. He has failed to set forth his claim pursuant to the three-prong *Pierce* test for establishing an ineffective assistance of counsel claim. "Claims of ineffective assistance of counsel are not self-proving...." *Com. v. Wharton*, 571 Pa. 85, 811 A.2d 978, 986 (2002); *see also Commonwealth v. Pierce*, 786 A.2d at 221.

Therefore, Appellant's boilerplate, undeveloped argument respecting the ineffectiveness of all prior counsel is insufficient to establish an entitlement to post-conviction relief. *See Spotz*, 896 A.2d at 1250; *Commonwealth v. Bond*, 572 Pa. 588, 819 A.2d 33, 41 (2002) (noting that a boilerplate allegation that all prior counsel were ineffective for failing to litigate waived issues does not discharge the appellant's burden of proving ineffectiveness); *Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 940 n. 4 (2001); *Commonwealth v. Abdul–Salaam*, 570 Pa. 79, 808 A.2d 558, 560 n. 3 (2001).

## XI. Cumulative Error

Finally, Appellant contends that he is entitled to relief from his conviction and sentence because of the cumulative effect of the errors he has alleged in his brief to this Court. As this Court has often held, no number of failed claims may collectively warrant relief it they fail to do so individually. *Commonwealth v. (James) Williams*, 586 Pa.553, 896 A.2d 523, 548 (2006); *Commonwealth v. Rollins*, 738 A.2d at 452; *Commonwealth v. Blystone*, 555 Pa. 565, 725 A.2d 1197, 1208–09 (1999); *Commonwealth v. (Craig) Williams*, 532 Pa.265, 615 A.2d 716, 722 (1992).

Accordingly, the order of the PCRA court is vacated and the matter is remanded for additional proceedings consistent with this opinion.

Chief Justice CAPPY, Justice CASTILLE, Justice BALDWIN and Justice FITZGERALD join the opinion.

Justice SAYLOR concurs in the result.

Justice EAKIN files a concurring and dissenting opinion.

Justice EAKIN, concurring and dissenting.

I join the majority opinion, with the exception of Section V(C), which remands to the PCRA court for testimony about trial counsel's consideration of Appellant's potential mental health problem. Majority Op., at 107–10, 928 A.2d at 239–41.

As the majority indicates, this Court's standard of review after the denial of PCRA relief is limited to determining whether the PCRA court's ruling is supported by the record and free of legal error. *Id.*, at 80–81, 928 A.2d at 223; *see also Commonwealth v. Jones*, 583 Pa. 130, 876 A.2d 380, 384 (2005). The PCRA court reviewed Appellant's claim he had a mental health problem and determined "[Appellant's] affidavits from friends and family members alleging [he] suffered mental problems do not establish mitigation. The allegations contained in these affidavits are of questionable accuracy and are without medical corroboration." PCRA Court Opinion, 7/26/04, at 10. The PCRA court concluded Appellant failed "to show how testimony to this effect would have swayed the jury to impose a different sentence." *Id.* This conclusion is supported by the record. Likewise, I find no legal error. Accordingly, under our well defined standard of review, the order below should be affirmed. I see no reason why the PCRA court should receive testimony about trial counsel's investigation when the PCRA court has justifiably determined there is no merit to the alleged mitigating mental health issue in the first place. Under our limited standard of review, I would affirm the PCRA court.