**Commonwealth v. Castro**

536

*Dennis J. Skayhan* and *Kelly S. Kline assistant district attorneys,* for Commonwealth.

*Richard A. Joyce* and *Holly B. Feeney, assistant public defenders,* for defendant.

*Osmer S. Deming,* PCRA counsel for defendant.

STALLONE, *J.,* July 12, 2010—On June 24, 2008, the defendant, Antonio Bones Castro, was arrested and charged with first-degree murder,[1] third-degree murder,[2] aggravated assault manifesting extreme indifference to the value of human life,[3] possessing instruments of crime,[4] tampering with or fabricating physical evidence[5] and criminal conspiracy to commit first-degree murder,[6] all arising out of the shooting death of Oscar Sanabria in the early morning hours of June 22, 2008. Mr. Sanabria was the boyfriend of Clarissa Castro, the defendant's sister. She was also arrested in connection with this incident, with charges docketed to criminal action no. CP-06-CR-0003777-2008.[7]

---

1. Title 18, 18 Pa.C.S. §2502(a) (Supp. 2010).
2. Title 18, 18 Pa.C.S. §2502(c) (Supp. 2010).
3. Title 18, 18 Pa.C.S. §2702(a)(1) (Supp. 2010).
4. Title 18, 18 Pa.C.S. §907(b) (Supp. 2010).
5. Title 18, 18 Pa.C.S. §4910(1) (Supp. 2010).
6. Title 18, 18 Pa.C.S. §903(a)(1)(2) (Supp. 2010).
7. Clarissa Castro was charged with first-degree murder, third-degree murder, aggravated assault manifesting extreme indifference to the value of human life and criminal conspiracy to commit first-degree murder.

In the criminal complaint, the Commonwealth alleged that the shooting took place inside a black Ford Escort GT owned and operated by Clarissa Castro, while the defendant was seated in the right front passenger seat and Oscar Sanabria was sitting in the rear seat. The Commonwealth further alleged that, after shooting Mr. Sanabria, the defendant poured gasoline inside the vehicle but unsuccessfully attempted to light it on fire.

After the defendant's preliminary arraignment, the Commonwealth filed a written notice of intent to seek the death penalty in accordance with section 9711(d) of the Judicial Code. The defendant then proceeded to file a series of pretrial motions with this court, consisting of (1) a total of four motions challenging the Commonwealth's intent to seek the death penalty, each on different grounds, (2) a motion to suppress statements and other physical evidence and (3) an application for habeas corpus relief, in the form of a dismissal of all charges for lack of sufficient evidence. All were denied by this court, after hearings held during the week of February 2, 2009.[8]

---

On March 13, 2009, in accordance with a "charge bargain" entered into with the Commonwealth, she entered a plea of guilty to the charge of criminal conspiracy to commit first-degree murder and was sentenced by this court to serve a period of two years to 59 months at Berks County Prison, with credit for 254 days time served. She was also ordered to pay the funeral expenses for Oscar Sanabria, jointly and severally with her brother, Antonio Bones Castro, in the amount of $4,914.

8. This court filed an opinion and order on February 19, 2009 denying the defendant's suppression motion, along with separate orders that same date (without opinions) denying his four motions challenging the Commonwealth's intent to seek the death penalty and his application for habeas corpus relief.

On March 13, 2009, the defendant entered a plea of guilty to the charge of first-degree murder, pursuant to a plea bargain entered into with the Commonwealth. This plea bargain was conditioned upon the Commonwealth's agreement to withdraw its request for the death penalty. In connection with the entry of his guilty plea, the defendant submitted a three-page written colloquy, which contained his answers to a series of questions with his acknowledgment and signature on each page. This was followed by an oral colloquy between the defendant, the assistant district attorney and this court. That same date, this court sentenced the defendant to life in prison, without parole, in a state correctional facility, with credit for 262 days time served. Although the defendant was advised and indicated his understanding of his appeal rights, in writing, by way of a written "acknowledgment of post-sentence procedure following guilty plea" filed of record,[9] he did not file any post-sentence motion with this court or an appeal from the judgment of sentence to the Superior Court of Pennsylvania.

Instead, he filed a timely first petition for PCRA relief on January 12, 2010. Upon being advised of the filing, this court appointed Osmer S. Deming, Esquire to represent him. With Attorney Deming's assistance, the defendant filed an amended first petition for PCRA relief, setting forth three separate claims in support of his request for leave to withdraw his guilty plea and proceed to trial. After a hearing held, we now file this opinion in disposition of those claims.[10]

9. N.T., guilty plea and sentencing hearing, pp. 47-48.

10. At the hearing, the defendant expressly indicated his understanding that, in the event that this court were to grant the relief which he is seeking, on any or all of his claims, he would be subject to the pos-

The defendant's first contention is that he did not enter his guilty plea knowingly, intelligently and voluntarily, inasmuch as he was taking medication for depression[11] at the time that he entered his plea. For the reasons which follow, we disagree.

In Pennsylvania, it is well-settled that, after sentence has been imposed, a defendant may be permitted to withdraw a guilty plea only to correct what the law perceives to be "manifest injustice." *Commonwealth v. Lesko,* 502 Pa. 511, 467 A.2d 307 (1983); *Commonwealth v. Leonhart,* 358 Pa. Super. 494, 517 A.2d 1342 (1986). Here, the record does not support such a finding.

At the outset, we note that the record demonstrates that the defendant clearly understood the nature of the proceeding, the charge to which he was entering his plea and the rights which he was giving up by entering the plea (N.T., guilty plea and sentencing hearing, pp. 8-10):

"Mr. Skayhan: Do you understand that you are presumed innocent until proven guilty beyond a reasonable doubt?

"Antonio Bones Castro: Yes, sir.

"Mr. Skayhan: Do you understand you have an absolute right to a trial by jury in this matter?

"Antonio Bones Castro: Yes, sir.

---

sible imposition of the death penalty if found guilty at trial of the charge of first-degree murder. N.T., PCRA hearing, pp. 4, 15.

11. He claims to have been taking three separate medications, including Sinequan and two others, the identity of which was unknown to him. N.T., PCPA hearing, p. 8.

"Mr. Skayhan: Do you understand you have the right to file various pretrial motions including a writ of habeas corpus and a motion to suppress physical evidence?

"Antonio Bones Castro: Yes, sir.

"Mr. Skayhan: After you plead guilty you have only certain limited rights. You have a right to challenge whether or not the guilty plea was valid, whether your attorney was effective in representing you, the jurisdiction of the court and that you can appeal any sentence imposed on you to a higher court. Do you understand these rights?

"Antonio Bones Castro: Yes, sir.

"The Court: All right. Just let me interrupt. And do you also understand that those are the limited rights that you have?

"Antonio Bones Castro: Yes, sir.

"The Court: You do not have the right if you change your plea to guilty to appeal any of the decisions that this court made with regard to your petition to preclude the death sentence. You are aware of that, are you not—

"Antonio Bones Castro: Yes, sir.

"The Court: That then terminates that matter. You can't raise that later on, and the same with regard to your motion to suppress evidence and statements in this case. That matter is also determined to be at an end. It is not appealable if you change your plea to guilty. Do you understand that?

"Antonio Bones Castro: Yes, sir.

"The Court: Do you have any questions about either of those?

"Antonio Bones Castro: No, sir.

"The Court: All right. Go ahead, Mr. District Attorney.

"Mr. Skayhan: Yes, sir. I would now refer you to the written colloquy that the judge has in his possession at this time. Is that your signature on each of those page?

"Antonio Bones Castro: Yes, sir.

"The Court: Do you want the original?

"Mr. Joyce: Yeah.

"Mr. Skayhan: And are those your answers to the questions contained on each one of those three pages?

"Antonio Bones Castro: Yes, sir.

"Mr. Skayhan: And did you answer those questions truthfully?

"Antonio Bones Castro: Yes, sir.

"The Court: Mr. Castro, I understand from our previous proceedings that you do understand English and speak English very very well; is that correct?

"Antonio Bones Castro: Yes, sir.

"The Court: All right. And, therefore, when you went over that written colloquy with your attorney Mr. Joyce, you had no trouble with the questions and the way you answered them?

"Antonio Bones Castro: No, sir . . .

"The Court: And I'm also assuming that you did not have any alcoholic beverages or any drugs of any kind or you're not under any kind of medication that precludes you from clearly understanding what the court is doing today and what you are doing today, correct?

"Antonio Bones Castro: Yes, sir.

"The Court: Okay.

"Mr. Joyce: Just so the court is aware, he is on medication but it actually aids probably in proceeding today."[12]

Immediately thereafter, this court gave the defendant the opportunity to respond to that statement, to which he clearly agreed (*Id.* at 11):

"The Court: Is that correct?

"Antonio Bones Castro: Yes, sir."

Furthermore, we saw nothing either in the defendant's demeanor, his answers to the questions posed to him or the manner in which he answered those questions which would have given this court any reason to believe that the defendant was not knowingly, intelligently and voluntarily entering his plea. And on that issue, we made the following statement on the record at the hearing held on the amended first petition (N.T., PCRA hearing, pp. 27-28):

"The long and short of it is that back in March of last year, at the guilty plea hearing, you did not say one word indicating . . . that you cannot comprehend what was

---

12. As noted, Attorney Joyce, the defendant's guilty plea counsel, did advise this court, in the defendant's presence, that the defendant was taking medication for depression. (N.T., guilty plea and sentencing hearing, p. 11.)

See also, questions 7 and 8 on the guilty plea colloquy, and the defendant's answers thereto, as follows:

"7. I _X_ have __ have not consumed alcohol, medication, or illegal drugs in the last 48 hours. Explain all consumption: Sinequan.

"8. I _X_ do __ do not currently suffer from mental illness. Explain any current illness: major depression."

going on, or that you had any difficulty one way or the other either understanding, reading, writing or whatever.

"I said to you then, and I say to you now, you're an educated young man, you could read this transcript, you are not under any kind of stress or anything else, even though you were under a very serious charge at that particular time. You were very pleased with the bargain that was entered into, the plea bargain that was entered into between your lawyer and a district attorney to take the plea that you did, and that would only give you a life sentence rather than death and that your sister would get a much lighter sentence, even though she was present."

And perhaps most importantly, this court then asked the defendant "Wasn't that the way it went?", to which the defendant replied "Yeah." *Id.* at 28.

And so, for these reasons, we find that the defendant has failed to meet his burden of proving that he did not enter his guilty plea knowingly, intelligently and voluntarily and, therefore, that "manifest injustice" requires us to allow him to withdraw his guilty plea.

The defendant further contends that Attorney Joyce was ineffective for misleading him into believing that he was pleading guilty to a "20 to 40 years and not a life offense." Essentially, the defendant claims that Attorney Joyce told him that he would receive a 20 to 40 year sentence if he entered the plea of guilty. For the reasons which follow, we conclude that the record likewise does not support this claim.

In evaluating a claim of ineffective assistance of counsel, this court must presume that counsel's assistance is effective. In order to overcome that presumption, the

defendant must prove (1) that his underlying claim has arguable merit;[13] (2) that his counsel had no reasonable basis for his alleged action or conduct[14] and (3) that he sustained prejudice as a result of the alleged ineffective assistance of counsel.[15] *Commonwealth v. Rainey,* 593 Pa. 67, 928 A.2d 215 (2007); *Commonwealth v. Lynch,* 820 A.2d 728 (Pa. Super. 2003); *Commonwealth v. Hickman,* 799 A.2d 136 (Pa. Super. 2002). A failure by the defendant to prove any one of these three elements must necessarily result in the dismissal of his claim. *Id.*

Beginning with the defendant's written guilty plea colloquy, we note that the following appears on page 1:[16]

---

13. This court has not been able to find any case law defining what is meant by the term "arguable merit."

14. Under Pennsylvania law, the PCRA court cannot find counsel to be ineffective if it determines that the particular course chosen by counsel had some reasonable basis designed to effectuate the client's interest. *Commonwealth v. Williams,* 587 Pa. 304, 899 A.2d 1060 (2006). If the court finds that counsel's chosen course had some reasonable basis, the inquiry ends and counsel's assistance is deemed to be constitutionally effective. *Id.*

15. To demonstrate prejudice, the defendant must show that there is a reasonable probability that, but for counsel's alleged ineffective assistance, he would not have pleaded guilty and would have instead gone to trial. *Commonwealth v. Hickman,* 799 A.2d 136, 141 (Pa. Super. 2002) (quoting *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). The term "reasonable probability" has been defined as a probability sufficient to undermine confidence in the outcome. *Commonwealth v. Sneed,* 587 Pa. 318, 899 A.2d 1067 (2006). The "reasonable probability" standard has been further defined as something less than the preponderance of the evidence standard. *Commonwealth v. Hickman, supra* at 141 (accord, *Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986)).

16. This precedes the statement which then appears at paragraph 14 of the guilty plea colloquy, in which the defendant states:

"I understand the nature of the charge to which I am pleading guilty."

The Defendant Desires To Plead Guilty To The
Following Offenses:

| Count | Offense | Maximum | Plea/Charge Agreement ~~Open Plea~~ (Circle one of the above) |
|-------|---------|---------|------|
| 1 | *Murder of the First Degree* | *Life Imprisonment Death $50,000* | *Life in Prison*[17] |

Moreover, the transcript of the guilty plea hearing demonstrates the defendant's understanding that he was pleading guilty to the charge of first-degree murder and would be sentenced to life in prison (N.T., guilty plea and sentencing hearing, pp. 8, 12 and 13):

"Mr. Skayhan: Thank you, your honor. Do you understand that you are here today before Judge Stallone charged with murder of the first degree?

"Antonio Bones Castro: Yes, sir. . . .

"Mr. Skayhan: A plea agreement has been negotiated between your attorney and the Commonwealth of Pennsylvania for docket 3778 of 2008. Do you understand that the judge is not bound by that plea agreement and does not have to follow it?

"Antonio Bones Castro: Yes, sir.

"Mr. Skayhan: And do you further understand that if the judge does not sentence you in accordance with the

---

17. All italicized language in this opinion is for emphasis only.

plea agreement, you may withdraw your guilty plea and proceed further?

"Antonio Bones Castro: Yes, sir.

"Mr. Skayhan: Do you understand—

"Mr. Skayhan: *Do you understand that the maximum permissible sentence for the charge of first-degree murder is death?*

"Antonio Bones Castro: *Yes, sir.*

"Mr. Skayhan: In light of your answers to the questions on the record and in light of your answers in the guilty plea colloquy, is it your intention to plead guilty and to be sentenced in accordance with the plea agreement?

"Antonio Bones Castro: Yes, sir.

"Mr. Skayhan: By pleading guilty you admit that on or about June 22nd of the year 2008, you were in a car in Berks County, Pennsylvania with the victim Oscar Sanabria in the early morning hours of that day. You fired multiple shots in the body of Oscar Sanabria, emptying the gun, with the intent to kill Oscar Sanabria, and you did in fact kill him. After killing him you drove the vehicle to a location where you attempted to burn both the body and the vehicle. Do you agree to those facts?

"Antonio Bones Castro: Yes, sir.

"The Court: And with regard to the statement or the confession that you tried to suppress and which we had the hearing with regard to it. Was that a truthful statement at that time?

"Antonio Bones Castro: Yes, sir.

"The Court: With regard to what occurred?

"Antonio Bones Castro: Yes, sir.

"The Court: Okay."

Finally, the record shows that at no time after the sentence was imposed did the defendant object on the basis that it was his understanding that he was only supposed to receive a 20 to 40 year sentence (N.T., guilty plea and sentencing hearing, pp. 47-48):

"The Court: All right. With regard to Antonio, you want to stand, please, Antonio. All right, this is CR-3778-08, Count 1, the charge of murder in the first degree, 18 Pa.C.S. §2502(a). And now, this 13th day, the sentence is that the defendant here, Antonio Bones Castro, be *committed for a period of life in imprisonment without parole,* and that sentence is to be Bureau of Corrections for confinement in a state correctional facility. This sentence shall be effective this date in accordance with the stipulation of counsel for both the defense and the Commonwealth. It is ordered that the defendant receive credit for 262 days time served. The court also directs that the defendant shall pay the court costs together with restitution which includes the funeral expenses of Oscar Sanabria in the sum of $4,914, and that will be paid jointly and severally with co-defendant Clarissa Castro.

"All right. Now, with regard to the post-sentence rights, I see that you have sent up to me the defendant's acknowledgment of post-sentence procedure following a guilty plea.

"Mr. Joyce: That's correct, your honor. I've reviewed the post-sentence procedures form with Mr. Castro. I've

provided him a copy for his records and you have his signed acknowledgment of receipt of that copy.

"The Court: Did you have any questions with regard to that, Mr. Castro?

"Antonio Bones Castro: No, sir."

We must also note that Attorney Joyce testified at the hearing on the amended first petition that he did have a discussion with the defendant concerning a possible 20 to 40-year sentence, but only in the context that such a sentence might be imposed in the event that the defendant were to proceed to trial and be found guilty of third-degree murder, as opposed to first-degree murder. N.T., PCRA hearing, pp. 40-41. Significantly, Attorney Joyce's testimony was not rebutted in any way by the defendant. And certainly, given the fact that the defendant was charged with first-degree murder, which carries a mandatory sentence of life in prison or death under the Pennsylvania Crimes Code, we cannot conceive of any logical reason, nor has the defendant provided us with any, as to why Attorney Joyce, an experienced criminal defense attorney, would have made such a representation to the defendant. And so, for all of these reasons, we find that the defendant is not entitled to post-conviction relief on this claim, as it is without any arguable merit.

The defendant's third and final claim is that he was threatened into pleading guilty and that, according to his amended petition, "if he hadn't pleaded guilty, he would be hurt." This threat allegedly came from an individual named Sammy Cruz, which had been communicated to him through other inmates at Berks County Prison, whose identities were unknown to him.

In Pennsylvania, the communication of a threat may be a basis for permitting a defendant to withdraw a guilty plea. See *Commonwealth v. Porreca,* 528 Pa. 46, 595 A.2d 23 (1991). However, it is also well settled that a defendant is bound by statements made in a written guilty plea colloquy. *Commonwealth v. Stork,* 737 A.2d 789 (Pa. Super. 1999). In this case, the defendant admitted that he never advised Attorney Joyce or anyone else, including the officials at Berks County Prison where he was incarcerated at the time, of this alleged threat. N.T., PCRA hearing, p. 59. This testimony was corroborated by Attorney Joyce, who indicated that the defendant never told him about any such alleged threat or expressed any concern about his safety at Berks County Prison N.T., PCRA hearing, p. 51. That leaves us with nothing more than the defendant's unsubstantiated claim, which is directly contradicted by the following statement which appears in paragraph 15 on page two of his written guilty plea colloquy:

"No one has forced me to plead guilty or has threatened me to do so. I am pleading guilty of my own free will to the offenses listed on page one because I committed them."

In view of that statement, and considering the fact that the defendant has failed to provide this court with any evidence whatsoever to support this claim, we must conclude that the defendant has not met his burden of proof that "manifest injustice" requires this court to allow him to withdraw his guilty plea, as it relates to this particular claim as well.

Accordingly, we enter the following attached order.

## ORDER

And now, July 12, 2010, the defendant's amended first petition for relief under the Post Conviction Relief Act is denied.