J-A15027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AHMAD RANA | |
| Appellant | No. 1693 EDA 2020 |

Appeal from the PCRA Order Dated August 13, 2020
In the Court of Common Pleas of Lehigh County
Criminal Division at No.: CP-39-CR-0002508-2018

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:          **FILED NOVEMBER 24, 2021**

Appellant Ahmad Rana appeals from the August 13, 2020 order of the of the Court of Common Pleas of Lehigh County ("PCRA court"), which denied his petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  Upon review, we affirm, albeit on a different basis than the PCRA court.[1]

The facts and procedural history of this case are undisputed.  As summarized by the PCRA court:

> Carlos Villanueva was working at the LukOil gas station and convenience store located at 1452 Tilghman Street, Allentown, Lehigh County, Pennsylvania on April 19, 2018.  During the early morning hours of April 19, 2018, [Appellant] entered the

---

[1] "This Court may affirm a PCRA court's decision on any grounds if the record supports it."  ***Commonwealth v. Smith***, 194 A.3d 126, 132 (Pa. Super. 2018) (citation omitted), ***appeal denied***, 208 A.3d 64 (Pa. 2019).

convenience store bare chested, as he was holding his shirt in his hands instead of wearing it. At that time, Mr. Villanueva was waiting on two (2) customers who were in line to be checked out. [Appellant] appeared to be upset and he became argumentative with Mr. Villanueva. [Appellant's] behavior caused the customers to become quite uneasy. Consequently, Mr. Villanueva requested that [Appellant] leave the convenience store, as it was the policy of the store that the customers needed to wear a shirt inside this establishment and that he was not acting appropriately. [Appellant] put on his shirt, and then indicated that he had just been thrown out of a bar and that he wanted to purchase cigarettes.

Additionally, Mr. Villanueva smelled alcohol on [Appellant]. Mr. Villanueva tried to explain to [Appellant] that he could not sell him cigarettes at that time. In response, [Appellant] became more aggressive and verbally assaultive to Mr. Villanueva.

Mr. Villanueva told [Appellant] that they should take this scene outside. Both of the men left the convenience store, but Mr. Villanueva immediately walked back inside and locked the door, thereby locking [Appellant] out. [Appellant] began to bang on the exterior door of the establishment for approximately five (5) minutes. Ultimately, [Appellant] returned to his vehicle, a maroon or burgundy Subaru Legacy, and left the subject premises.

Mr. Villanueva's shift ended at 6:00 A.M. At that time, he went home, but he then returned to work at approximately 11:30 A.M for his next shift. When he returned to work, his boss and owner of the LukOil, Gary Singh, was present. Mr. Villanueva recounted to Mr. Singh the events of early morning hours with [Appellant].

Later that same day, during the afternoon hours, [Appellant] returned to the convenience store. Mr. Villanueva told [Appellant], who was still dressed in the same blue suit as he was earlier that morning and who still appeared to be drunk, that he could not serve him due to his earlier disruptive behavior. [Appellant] became irate and tried to reach over the counter and Mr. Villanueva's shoulder to grab a pack of cigarettes. Mr. Villanueva pushed [Appellant's] arm away. [Appellant] became more belligerent and began to make "gun" gestures with his hand. Mr. Villanueva put his hand on a .38 caliber handgun that was located at the register. At this point,

[Appellant] and Mr. Singh began to argue. [Appellant] made statements about Mr. Singh's heritage, including, "Are you Indian? I am Pakistani." [Appellant] also stated, "I am going to shoot this place up;" "I know where you live;" "I know what car you drive;" "I know what car your wife drives;" and "You don't know who I am." In addition, [Appellant] put his hand into his pocket and Mr. Singh thought that he might have seen something in his pocket that could be consistent with a gun. Mr. Singh felt threatened by this interaction with [Appellant], and he unholstered the gun that he wore on his belt, took it out, and pointed it towards the ground. When [Appellant] observed the gun, he exited the store, got into to his vehicle, and left the LukOil parking lot. As he pulled out, he continuously honked the horn of his vehicle.

Soon thereafter, [Appellant] returned again to the LukOil property. [He] drove around the parking lot yelling. Shortly after his arrival, [Appellant] left the area. Mr. Singh called the police after this incident, which was at approximately 5:15 P.M. Sergeant Andrew Moll and Officer Zachary Budnis of the Allentown Police Department responded, and Mr. Singh recounted the events of the day to Officer Budnis. In addition, Mr. Singh provided Sergeant Moll with the license plate and a description of [Appellant's] vehicle. Sergeant Moll ran the license plate and determined that the vehicle was registered to a Breinigsville location, which was a location under the jurisdiction of the Upper Macungie Township Police Department. Consequently, Sergeant Moll contacted the Upper Macungie Township Police Department to request that they check the residence and to make contact with [Appellant] if the vehicle was located. Sergeant Moll was notified by the Upper Macungie Township Police Department that the vehicle was not present at the Breinigsville address.

[Appellant] returned to the LukOil later that same day. At that time, Mr. Villanueva was outside smoking a cigarette. He heard Mr. Singh and [Appellant] yelling, and Mr. Singh recorded the end of this encounter on his cell phone. As [Appellant] was driving away, he stated, "My name is Ahmad Rana. Remember my name, remember my face." In addition, he made gestures with his hand to simulate a gun. Mr. Singh called the police again.

- 3 -

Officer Budnis responded to the LukOil and was able to obtain still frames from the video that Mr. Singh had taken on his cell phone. These still frames were provided to Sergeant Moll who identified the actor as [Appellant], with an address of 3101 Trexler Boulevard, Allentown, Lehigh County, Pennsylvania. Sergeant Moll noted that this address was located at the border between the City of Allentown and South Whitehall Township.

Consequently, Sergeant Moll went to the subject address to determine if the vehicle was parked at this residence. Sergeant Moll's intention was not to make contact with [Appellant]. However, when he pulled up to the address, he observed [Appellant] leave his residence, and run bare chested towards his police vehicle. Sergeant Moll exited his vehicle for officer safety and activated his camera. As South Whitehall Township authorities had been notified of the earlier incident due to the jurisdictional border location, a South Whitehall Township Officer observed [Appellant] approaching Sergeant Moll and he exited his vehicle to assist Sergeant Moll. Sergeant Moll characterized [Appellant's] behavior as erratic. [He] was acting boisterously and uttering nonsensical statements. He appeared to be intoxicated or mentally ill in Sergeant Moll's training and experience. In addition, [Appellant] continuously reached into his pockets, which concerned Sergeant Moll in light of the earlier report that [Appellant] possibly possessed a handgun. Therefore, Sergeant Moll detained [Appellant] in handcuffs for officer safety, and [Appellant] was placed in Officer Budnis' police cruiser. During the transport to the Headquarters of the Allentown Police Department, [Appellant] was slamming his head on the strong plastic barrier that separated the front seat from the back seat. Officer Budnis indicated that [Appellant] was visibly upset and uncooperative, and screamed and yelled at Officer Budnis that he was "going to kill him," "will rape him," and "will fucking kill him." Additionally, Officer Budnis noted that [Appellant] smelled of alcohol.

Trial Court Opinion, 8/13/20, at 2-6 (internal citations omitted). On November 15, 2018, a jury found Appellant guilty of simple assault,

disorderly conduct, and harassment,[2] and acquitted him of terroristic threats with intent to terrorize another.[3]  On the same day, the trial court separately convicted Appellant of public drunkenness, a summary offense.[4]  On December 17, 2018, the trial court sentenced Appellant to an aggregate term of two years' probation.  Appellant did not file any post-sentence motions or a direct appeal.  On December 30, 2019, Appellant filed a counseled PCRA petition, asserting various ineffectiveness claims.  Following an evidentiary hearing, the PCRA court denied Appellant's petition on August 13, 2020.  Appellant timely appealed.  Both Appellant and the PCRA court complied with Pa.R.Crim.P. 1925.

On appeal,[5] Appellant raises a single issue for our review.

> [I.] Did the PCRA court err in dismissing Appellant's PCRA Petition and should judgment of sentence be vacated because trial counsel was ineffective for failing to argue for judgment of acquittal in relation to Appellant's simple assault conviction and Appellant suffered prejudice because there was no physical assault by Appellant and no substantial step toward the commission of a crime that would have placed complainants in danger of death or serious permanent disfigurement?

---

[2] 18 Pa.C.S.A. §§ 2701(a)(3), 5503(a)(1), and 2709(a)(4), respectively.

[3] 18 Pa.C.S.A. § 2706(a)(1).

[4] 18 Pa.C.S.A. § 5505.

[5] "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" ***Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014) (quoting ***Commonwealth v. Rainey***, 928 A.2d 215, 223 (Pa. 2007)).

Appellant's Brief at 4 (unnecessary capitalization omitted).

Before we may review the merits of Appellant's issues on appeal, we must determine whether he is eligible for collateral relief. Section 9543 of the PCRA provides that, to be eligible for relief, a petitioner must "plead and prove by a preponderance of the evidence . . . [t]hat the petitioner has been convicted of a crime under the laws of this Commonwealth and is **_at the time relief is granted[,] currently serving a sentence of imprisonment, probation or parole for the crime_**." 42 Pa.C.S.A. § 9543(a) (emphasis added); **_see Commonwealth v. Ahlborn_**, 699 A.2d 718, 720 (Pa. 1997) (noting that "the denial of relief for a petitioner who has finished serving his sentence is required by the plain language of the statute").

Here, based upon our review of the record, and as mentioned earlier, Appellant was sentenced on December 17, 2018 to two years' probation. However, on December 17, 2020, during the pendency of this appeal, Appellant completed his probationary sentence. As a result, and consistent with **_Ahlborn_**, he does not meet the eligibility requirements outlined in Section 9543(a). Accordingly, we do not have jurisdiction over this appeal. Appellant does not obtain relief.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 11/24/2021*