J-A03005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PETER ALLEN O'FLYNN | : | |
| | : | |
| Appellant | : | No. 599 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 26, 2022
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001190-2019

BEFORE: KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED APRIL 12, 2023**

Appellant, Peter Allen O'Flynn, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial convictions for theft by unlawful taking, recklessly endangering another person ("REAP"), false identification to law enforcement authorities, aggravated assault of a police officer, fleeing or attempting to elude a police officer, and accidents involving damage to attended vehicle.[1] We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> The following testimony was presented at trial. On December 31, 2018, at approximately 10:00 a.m., Officer

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3921(a); 2705; 4914(a); 2702(a)(6); 75 Pa.C.S.A. §§ 3733(a); and 3743(a), respectively.

Daniel Francis Boyd of the Springfield Township Police Department was dispatched to the Parkway Inn on Baltimore Pike in Springfield, Delaware County, to investigate a domestic assault in progress. The description of the actors he received from dispatch was a Caucasian male and female, both dressed in black. Upon his arrival, Officer Boyd observed two people matching that description in front of Michael's Crafts Store. As he approached in a marked patrol car and in full uniform, both suspects started walking across the street. Officer Boyd exited his patrol vehicle and asked them to come back and talk with him. Officer Boyd spoke to the male suspect. Officer Boyd asked him if he and his girlfriend had been fighting; he replied "no." Officer Boyd observed fresh scratch marks around his neck which were bleeding, indicating a recent physical altercation. Officer Boyd asked his name and [Appellant] replied "Michael Meehock." [Appellant] also denied having any identification on his person. Officer Cesanek from Morton Borough Police Department arrived as a back-up officer. She ran the name through NCIC. The name Michael Meehock with the date of birth provided came back with "no record found." The Officer testified that this is common when a person is being deceptive about their identity. Officer Boyd then spelled the name [Appellant] provided him out loud; [Appellant] confirmed the spelling. Officer Cesanek ran the information a second time and it still came back as "no record found." Officer Boyd informed [Appellant] that he was being deceptive about his identity. Officer Boyd told [Appellant] he was under police investigation for disorderly conduct and possibly for assault. After the warning, [Appellant] provided the fake name and date of birth two more times. Officer Boyd then spoke with the female and informed her that her boyfriend was getting himself in trouble by not giving his real name. She said his name is Pete but refused to provide his last name.

Sergeant McKinney arrived on the scene. He told [Appellant] that he was not giving the police accurate information. [Appellant] was advised he was going to be charged with another crime if the police continued to get "no record found" on the name provided. He further informed [Appellant] that he was going to be detained and taken to the police station for a Live Scan to determine his identity. At that point, [Appellant] said his real name is Peter O'Flynn.

As Officer Boyd was writing the information in his notepad, he heard Officer Cesanek say "don't do it." At that moment, [Appellant] jumped to his feet and ran across Baltimore Pike. Officer Boyd identified [Appellant] as the defendant from a JNET photo which was admitted into evidence.

After [Appellant] took off on foot, Officer Cesanek and Officer Boyd gave chase after him. As he ran through 721 Saxer Avenue, Officer Boyd heard Officer Cesanek say that [Appellant] was getting into a car. Officer Boyd saw [Appellant] inside a Mercedes which was pulling out of the driveway. Officer Boyd ran to the side of the car and tried to open the door. [Appellant] continued to back up. Officer Boyd was directly in front of the vehicle. [Appellant] accelerated the vehicle and nearly struck Officer Boyd, forcing him to jump out of the way to avoid being hit. Officer Boyd testified the car came close enough to him to put him in fear for his life. [Appellant] made a left out of the driveway and another left onto Saxer Avenue. Sergeant McKinney then gave chase in a marked patrol vehicle.

Detective Leah Cesanek is employed by the Yeadon Borough Police Department. At the time of this incident, she was employed by the Morton Borough Police Department as a patrol officer. She was dispatched to assist in an investigation of a domestic disturbance with the Springfield Township Police Department. Officer Cesanek's account of her interaction with [Appellant] providing false identification information was similar to Officer Boyd's testimony. She testified she ran [Appellant's] information a total of three times before [Appellant] admitted his identity. Detective Cesanek also identified [Appellant] from a JNET photo which was admitted into evidence. Detective Cesanek's account of [Appellant's] flight and foot pursuit also mirrored Officer Boyd's account. She observed [Appellant] enter a Mercedes sedan and almost strike Officer Boyd as he pulled out of the driveway to flee the area. Detective Cesanek relayed a radio transmission that [Appellant] almost struck Officer Boyd and other officers should use caution if encountering him. Detective Cesanek was wearing a body camera. The recording was admitted into evidence and published to the jury in its entirety.

Sergeant Andrew McKinney is employed by the Springfield

Township Police Department. On December 31, 2018 he was dispatched to Michael's Craft Store for a reported domestic between a male and female in Springfield, Delaware County. He confirmed Officer Boyd and Detective Cesanek's accounts of [Appellant] providing false identification information and then fleeing on foot. When [Appellant] fled, Sergeant McKinney's car was parked in the Michael's parking lot. Sergeant McKinney ran back to his car, activated the lights and siren and exited the parking lot on to Baltimore Pike. At that time, he saw [Appellant] in an old tan Mercedes coming at him. Sergeant McKinney tried to stop him, but [Appellant] cut across the front of his vehicle and proceeded eastbound on Baltimore Pike. [Appellant] was travelling at a high rate of speed. He observed [Appellant] go through a steady red light at Baltimore Pike and Andrew Road. [Appellant] then smashed the front end of a car in that intersection and kept going; leaving the other vehicle disabled in the roadway. Sergeant McKinney continued after [Appellant]. After [Appellant] went through a red light at the next block, Sergeant McKinney determined the pursuit was too dangerous and discontinued it. After he terminated the pursuit, Sergeant McKinney returned to the accident scene. Sergeant McKinney also identified the defendant as [Appellant].

Mr. Mark Santoro was making a bread delivery at the Swiss Farms on Baltimore Pike in Springfield on December 31, 2018, at approximately 10:00 a.m. He saw someone run across the street in between two of the residences. Then he saw two police officers chasing that person. Not long after that, he saw both officers retreating from a car "whipping" out of the driveway. He testified that one of the officers had to leap out of the way to avoid being hit by the car. The car then proceeded through the intersection of Baltimore Pike and Saxer Avenue against the red light. The car then made a left on Baltimore Pike heading towards Lansdowne.

Mr. David Nguyen lives at 717 Saxer Avenue, Springfield, Delaware County, Pennsylvania. On December 31, 2018, at approximately 10:00 a.m. his 1985 Mercedes Benz 3-D, champagne color, was taken from his residence without his permission.

(Trial Court Opinion, filed 4/20/22, at 1-7) (internal citations omitted).

- 4 -

Procedurally, a jury convicted Appellant of the above-mentioned offenses on September 1, 2021. The court sentenced Appellant on January 26, 2022, to an aggregate term of 45 to 90 months' imprisonment plus five years' probation. Appellant timely filed a notice of appeal on February 23, 2022. On February 28, 2022, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on March 16, 2022.

Appellant raises five issues for our review:

> 1. Did the [c]ourt, after acknowledging on the record that [Appellant] had psychological problems, fail to protect his rights by having him examined before or during trial, rather than postponing it until after a guilty verdict?
>
> 2. Were the rights of appellate review compromised by an inefficient system that makes complete appellate review impossible?
>
> 3. Was there evidence to convict [Appellant] of both [REAP] and Aggravated Assault on a Police Officer where there was no requisite *Mens Rea*?
>
> 4. Did the [c]ourt err by allowing the False Identification to go to a jury when the Police Officer acknowledged that [Appellant] gave correct information after being advised that he was under investigation?
>
> 5. When the [c]ourt insisted erroneously that [Appellant] kept changing his mind about a bench or jury trial when he never decided on a jury trial, did the [c]ourt err [i]n not allowing the bench trial?

(Appellant's Brief at 6).

In his first issue, Appellant argues that trial counsel made numerous motions for a mistrial and for a competency evaluation throughout the

proceedings. Appellant asserts that he was unable to aid in his defense. Appellant complains his behavior during trial demonstrated that he was incompetent to stand trial. Appellant emphasizes "the abuse he heaped upon the judge and his attorney, his talking to jurors from the defense table, and his staring at the jury" as signs of his incompetence. (*Id.* at 32). Appellant claims that even the court recognized Appellant's need for a psychologist, but then the judge refused to order a psychological or psychiatric exam to determine if Appellant was competent to stand trial. Appellant maintains that his attorney pleaded for the court to order a competency evaluation. Appellant avers that his attorney could not even concentrate based on Appellant's numerous outbursts. Appellant contends the court erroneously decided Appellant's outbursts were volitional and not the result of incompetency. Appellant insists that his actions compelled the jury to convict him. Appellant submits that the court's order directing a psychological evaluation after trial was insufficient, as the relevant inquiry is whether Appellant was competent at the time of trial. Appellant concludes the court erred by failing to order a competency evaluation during trial, and this Court must grant relief. We disagree.

"The matter of granting or denying a continuance is within the discretion of the trial court." *Commonwealth v. Sandusky*, 77 A.3d 663, 671 (Pa.Super. 2013). "[T]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the

witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." ***Id.*** (internal citation omitted). "Accordingly, a trial court exceeds its constitutional authority only when it exercises its discretion to deny a continuance on the basis of an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." ***Id.*** at 671-72 (internal citation and quotation marks omitted).

Further:

> A defendant is presumed to be competent to stand trial. Thus, the burden is on Appellant to prove, by a preponderance of the evidence, that he was incompetent to stand trial. In order to prove that he was incompetent, Appellant must establish that he was either unable to understand the nature of the proceedings against him or to participate in his own defense.

***Commonwealth v. Rainey***, 593 Pa. 67, 101-02, 928 A.2d 215, 236 (2007) (internal citations omitted).

Instantly, the record shows that on the first day of trial, Appellant refused to get dressed for trial. The court instructed Appellant to get dressed before he appeared in front of the jury. At that time, defense counsel requested a continuance to seek a competency evaluation for Appellant based on some of Appellant's behaviors. The Commonwealth objected, suggesting that Appellant's actions were volitional and not the product of any mental health issues. The court denied the continuance request, noting that Appellant appeared to be misbehaving in order to delay trial. (***See*** N.T. Trial, 8/31/21,

at 7-8). During *voir dire* and following open arguments, Appellant made several loud outbursts. The court then warned Appellant outside the presence of the jury that if Appellant did not stop misbehaving, the judge would remove him from the courtroom. Appellant had another outburst during Officer Boyd's testimony. At that point, defense counsel requested a mistrial, which the court denied. The court stated that Appellant's behavior was "definitely volitional," and that Appellant was an "obstructionist." (**See id.** at 93-94). The court then removed Appellant from the courtroom.

On the second day of trial, Appellant told the judge that he was "not competent for trial today" and dissatisfied with counsel's representation. Appellant stated he was not in the "right mental state of mind for trial." (N.T. Trial, 9/1/21, at 3). Defense counsel requested a mistrial once again and a mental health evaluation for Appellant. The court denied counsel's requests and removed Appellant from the courtroom.

In evaluating Appellant's claim on appeal, the court explained:

> Here, the court did not deny the continuance in an unreasoning or arbitrary way. Rather, the court determined [Appellant] was willfully attempting to delay trial by obstructing the proceeding every way he could think of… The court found: "There is nothing left but to have a jury trial and I think that [Appellant] is just upset that that day has finally come. He is trying to avoid facing a jury trial and I think that the time has come to continue forward with this case. So, I appreciate what you put on the record, and we will go forward with the case." N.T. 08/31/2021 pp. 7, 8.
> …

(Trial Court Opinion at 9-10).

The record supports the court's analysis. Throughout numerous pre-trial proceedings, Appellant participated, conversed with the court, and did not disrupt the proceedings. Nevertheless, Appellant made several pre-trial requests for new counsel and equivocated regarding whether he wanted a jury or bench trial. As discussed in more detail *infra*, Appellant's indecisiveness regarding whether he wanted a bench or jury trial compelled the court to grant numerous continuances, which postponed the trial date. Looking at Appellant's behavior at trial in the context of his behavior during earlier pre-trial proceedings, the record supports the court's statement that Appellant was adamant to delay trial and made several outbursts at trial as a last-ditch attempt to delay the proceedings. Nothing in the record shows that Appellant was unable to understand the nature or object of the proceedings against him. *See Rainey, supra*. The court gave Appellant multiple opportunities to participate in his defense, but he chose to disregard the court's warnings and to disrupt the proceedings. *See id.* On this record, we cannot say the court abused its discretion in denying Appellant's continuance request for a competency evaluation. *See Sandusky, supra*.

In his second issue, Appellant argues that there are more than 100 instances where the court reporter noted the word "inaudible" during the two-day trial. Appellant asserts that the court reporter did not disclose how long each "inaudible" instance lasted. Appellant contends that a complete and untarnished record is required for this Court to evaluate Appellant's appeal.

Appellant claims "[t]his Court should not speculate when a person's very freedom might depend on those missing words." (Appellant's Brief at 45). Appellant concludes the record is inadequate to conduct appellate review, and this Court must remand for a full and complete record. We disagree.

"[T]o be entitled to relief due to the incompleteness of the trial record the defendant must make some potentially meritorious challenge which cannot be adequately reviewed due to the deficiency in the transcript." **Commonwealth v. Sepulveda**, 618 Pa. 262, 332, 55 A.3d 1108, 1150 (2012). Moreover, our Rules of Appellate Procedure permit corrections to a transcript under the following circumstances:

**Rule 1922. Transcription of Notes of Testimony**

\* \* \*

**(c) Corrections to transcript.** If a transcript contains an error or is an incomplete representation of the proceedings, the omission or misstatement may be corrected by the following means:

(1) *By objection*. A party may file a written objection to the filed transcript. Any party may answer the objection. The trial court shall resolve the objections and then direct that the transcript as corrected be made a part of the record and transmitted to the appellate court.

(2) *By stipulation of the parties filed in the trial court*. If the trial court clerk has already certified the record, the parties shall file in the appellate court a copy of any stipulation filed pursuant to this rule, and the trial court shall direct that the transcript as corrected be made a part of the record and transmitted to the appellate court.

(3) By the trial court or, if the record has already been transmitted to the appellate court, by the appellate court or

trial court on remand, with notice to all parties and an opportunity to be heard.

Pa.R.A.P. 1922(c).

Instantly, we initially observe that Appellant did not object to any deficiencies in the transcripts until the filing of his appellate brief. Appellant did not file an objection in the trial court or seek to reach a stipulation with counsel concerning any omissions in the record. **See** Pa.R.A.P. 1922(c)(1), (2). Arguably, Appellant's claim is waived on this basis. **See generally Commonwealth v. Stanton**, 440 A.2d 585, 589 (Pa.Super. 1982) (stating: "At the very least, it is clear that Appellant failed to interpose an appropriate objection in accordance with the requirements of Pa.R.A.P. 1922, and Appellant is bound by the transcript, as lodged"). Further, Appellant fails to identify a potentially meritorious challenge which cannot be adequately reviewed due to the deficiency in the transcript. **See Sepulveda, supra**. In any event, we have carefully reviewed the relevant transcripts in this case. Although Appellant emphasizes each time the court reporter wrote the word "inaudible," our review of this appeal was not hampered by these instances. Rather, we were able to review all evidence adduced at trial as well as the pre-trial proceedings necessary to resolve each of Appellant's appellate claims. Therefore, Appellant's second issue on appeal merits no relief.

In his third issue, Appellant argues the evidence was insufficient to convict him of aggravated assault on a police officer. Appellant asserts that the officer put himself in a dangerous situation by chasing after Appellant

when he took off in the stolen vehicle. Appellant claims he honked the horn to alert the officer of the danger. Appellant contends the officer "may have been saved from being hit by the car by the effort of [Appellant] to avoid hitting him." (Appellant's Brief at 47). Appellant emphasizes that he lacked the *mens rea* to injure the officer. Appellant maintains he was not trying to cause the officer any harm but was merely trying to escape. Appellant submits the jury convicted Appellant based on his disruptive behavior during trial and not the evidence adduced at trial. Appellant concludes the evidence was insufficient to sustain his aggravated assault conviction, and this Court must reverse. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence.

> Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Crimes Code defines the offense of aggravated assault in pertinent part as follows:

**§ 2702. Aggravated assault**

**(a) Offense defined.**—A person is guilty of aggravated assault if he:

\* \* \*

(6) attempts by physical menace to put any of the officers, agents, employees or other persons enumerated in subsection (c), while in the performance of duty, in fear of imminent serious bodily injury[.]

18 Pa.C.S.A. § 2702(a)(6). Subsection (c) of this statute includes a police officer. *See* 18 Pa.C.S.A. § 2702(c)(1). "Serious bodily injury" is "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "A person is 'menacing' for purposes of an aggravated assault conviction if, based upon a totality of the circumstances, the behavior is 'frightening activity.'" *Commonwealth v. Evans*, 260 A.3d 98 (Pa.Super. filed July 20, 2021), 2021 WL 3056666 at *11

- 13 -

(unpublished memorandum).[2]

Instantly, the court analyzed this claim as follows:

> Looking at the evidence presented in this case, Officer Boyd saw [Appellant] inside a Mercedes pulling out of the driveway. Officer Boyd ran to the side of the car and tried to open the door. [Appellant] continued to back up. Officer Boyd was directly in front of the vehicle. [Appellant] accelerated the vehicle and nearly struck Officer Boyd, forcing him to jump out of the way to avoid being hit. Officer Boyd testified the car came close enough to him to put him in fear for his life. This incident was witnessed by Detective Cesanek and Mark Santoro who both testified similarly about the incident. In addition, there was Detective Cesanek's body cam recording which was published to the jury. This evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient for the jury as factfinder to conclude that all the elements of the crime of Aggravated Assault were established beyond a reasonable doubt.

(Trial Court Opinion at 13). The record supports the court's analysis. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to sustain Appellant's conviction for aggravated assault. *See* 18 Pa.C.S.A. § 2702(a)(6); *Sebolka, supra*.

In his fourth issue, Appellant argues that at the time Officer Boyd approached Appellant, no crime had been committed. Appellant asserts that when Officer Boyd asked Appellant for his name, Appellant was not under investigation. Appellant claims that once Officer Boyd told Appellant that he was under investigation, Appellant gave the correct information. Appellant

---

[2] *See* Pa.R.A.P. 126(b) (stating we may cite to and rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

emphasizes that it is not illegal to give a police officer a false identification until that person is told he is under investigation. Appellant concludes the evidence was insufficient to sustain his conviction for false identification to law enforcement, and this Court must reverse. We disagree.

The Crimes Code defines the offense of false identification to law enforcement authorities as follows:

> **§ 4914.  False identification to law enforcement authorities**
>
> **(a) Offense defined.**—A person commits an offense if he furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.

18 Pa.C.S.A. § 4914(a).

Instantly, the court addressed this issue as follows:

> Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to prove each of these elements beyond a reasonable doubt. The first element is unequivocally met; Officer Boyd arrived in a marked patrol car and was in uniform. The second element is also met since Officer Boyd expressly informed [Appellant] that he was the subject of an official investigation for disorderly conduct and possibly domestic assault. Still [Appellant] persisted in providing false information and claimed he had no identification on him. [Appellant] was not, therefore, solely under investigation as to his identity, as he claims was the case. The third element, too, is met because [Appellant] furnished Officer Boyd a false name and date of birth, after being informed, multiple times, that he was the subject of an official investigation of a violation of law. Again, [Appellant's] claim of insufficient evidence is meritless.

- 15 -

(Trial Court Opinion at 14-15).

The record supports the court's analysis. Although Appellant claims that he provided his correct name after being told he was under official investigation, Officer Boyd testified otherwise. To be sure, Officer Boyd clarified on re-direct examination that Appellant initially gave the name "Michael Meehock" two times to the officer. The officer then told Appellant that he was under investigation for a possible assault and disorderly conduct and that he would be charged if he continued to provide false information. Thereafter, Appellant "twice more gave…the name Michael Meehock[.]" (N.T. Trial, 8/31/21, at 131). It was only after Sergeant McKinney subsequently informed Appellant that he was going to have to come to the station and undergo a Live Scan, that Appellant provided his true identity. (**Id.**) Essentially, Appellant asks us to disregard Officer Boyd's testimony in favor of Appellant's claim that he furnished his correct name after the officer told him he was the subject of an official investigation. We will not usurp the role of the jurors as fact-finders, who resolved any conflict regarding the timing of events in favor of the Commonwealth. **See Sebolka, supra**. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to sustain Appellant's conviction for false identification to law enforcement authorities. **See** 18 Pa.C.S.A. § 4914(a); **Sebolka, supra**.

In his final issue, Appellant initially acknowledges that there is no absolute right to a bench trial. Nevertheless, Appellant argues that he did not

want a jury trial. Appellant claims the record belies the court's statements that Appellant kept changing his mind regarding whether he wanted a jury trial. Appellant insists that no one fully explained to him what rights he would be giving up if he waived his right to a jury trial, which had initially confused Appellant. Appellant maintains that he ultimately decided he wanted a bench trial, the court erred by requiring Appellant to proceed to a jury trial, and this Court must grant a new trial. We disagree.

Unlike a jury trial, there is no constitutional right to a bench trial. **Commonwealth v. Sanchez**, 614 Pa. 1, 51, 36 A.3d 24, 54 (2011), *cert. denied*, 568 U.S. 833, 133 S.Ct. 122 (2012). Moreover, the decision to grant or deny a bench trial is within the discretion of the trial court. **Commonwealth v. Merrick**, 488 A.2d 1, 3 (Pa.Super. 1985).

Instantly, the record discloses the following events relevant to this issue. At a hearing on August 10, 2020, defense counsel asked Appellant if he wanted a bench or jury trial. Appellant said he was unsure and asked for more time to decide. The court said that was okay and scheduled the next court date. (**See** N.T. Hearing, 8/10/20, at 5-6). On October 20, 2020, defense counsel informed the court that Appellant was still unsure whether he wanted to proceed with a bench or jury trial and that Appellant had not given a specific answer yet. The court said it would go forward with a jury trial then and set a status conference date. (**See** N.T. Hearing, 10/20/20, at 4). Appellant appeared before the court on January 11, 2021. At that time,

defense counsel represented that Appellant wanted a jury trial. Appellant disagreed and said he was "not too sure" if he wanted a jury trial and denied having told defense counsel that he wanted a jury trial. The court set another listing date. (*See* N.T. Hearing, 1/11/21, at 3-4). The parties appeared before the court again on March 15, 2021. Defense counsel told the court that Appellant wanted a bench trial. Appellant said he wished he knew more information so he could decide. Appellant then confirmed that he wanted a bench trial. The court informed Appellant he would have to sign a jury trial waiver form to proceed with a bench trial. The court scheduled the bench trial for May 19, 2021. (*See* N.T. Hearing, 3/15/21, at 3-9).

The parties appeared for the scheduled bench trial on May 19, 2021. At that time, defense counsel informed the court that Appellant had refused to sign the jury trial waiver form. The court said it would schedule a jury trial instead. Appellant then said he was ready to go forward with the bench trial that day. The court told Appellant that if he wanted to proceed with the bench trial, he would have to sign the jury trial waiver form and participate in the oral waiver colloquy. Appellant refused to do so. The court then asked defense counsel to speak with Appellant in private. Following their conversation, defense counsel informed the court that Appellant was not fully ready to waive his right to a jury trial. Appellant interjected that he wanted to proceed with a bench trial that day but did not want to sign the waiver form. (*See* N.T. Hearing, 5/19/21, at 3-9). Therefore, the court scheduled

- 18 -

the matter for a jury trial.

On August 31, 2021, Appellant appeared for his jury trial. Appellant told the court that he did not want a jury trial and wanted a bench trial instead. The court informed Appellant that he gave up that chance already and denied Appellant's request. (*See* N.T. Trial, 8/31/21, at 4-5).

Here, the record makes clear that Appellant had ample opportunity to decide whether he wanted to proceed with a jury trial or bench trial. Although Appellant insists on appeal that he wanted a bench trial, Appellant refused to sign the jury trial waiver form necessary to do so. Under these circumstances, the court did not abuse its discretion by denying Appellant's request for a bench trial. *See Merrick, supra*. Rather, the court properly proceeded with a jury trial to protect Appellant's constitutional right, because Appellant would not sign the jury trial waiver form. *See Sanchez, supra*. Therefore, Appellant's final issue merits no relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2023